(December 1, 1917.)

## C. P. RUSSELL, Appellant, v. BANK OF NAMPA, LIMITED, a Corporation, and E. SMALLWOOD, as Special Deputy Bank Commissioner and Receiver of Said BANK OF NAMPA, LIMITED, Respondents.

[169 Pac. 180.]

BANKS AND BANKING—INSOLVENCY—DEPOSITOR—TRUST FUND.

Where a party who is indebted to a bank leaves with it, as security, notes belonging to him, and authorizes it to collect upon them and apply a portion of the proceeds to the payment of his debt, and instructs it to not deposit the balance, but to deliver it to a third person, and the cashier, contrary to such instruction, deposits the balance in the bank, such balance is not a general but a special deposit, or trust fund.

[As to a bank's liability for special deposits, see note in 9 **Am. Dec.** 183.]

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to establish a preferred claim against the assets of an insolvent bank in the hands of a receiver. Judgment for defendants. *Reversed.*

T. A. Walters and Geo. H. Van de Steeg, for Appellant.

"The relation of banker and creditor cannot be created without the consent of the owner of the funds deposited." (3 R. C. L., sec. 183; *Winslow v. Harriman Iron Co.* (Tenn. Ch.), 42 S. W. 698.)

The bank in this case was a collecting bank merely as to the note and mortgage; it accepted the draft, payable to itself, as actual money in payment of said note and mortgage, and credited the account of Russell with the actual cash.

For authorities on the question as to when a deposit is special so that the title remains in the depositor, see note in 16 **L. R. A.** 516; 39 **L. R. A., N. S.,** 847.

(3 R. C. L., secs. 151, 261, 262; *Paul v. Draper*, 158 Mo. 197, 81 Am. St. 296, 59 S. W. 77.)

If this fund is a trust fund and the receiver came into possession of the same along with the other assets of the bank, what further is there to prove to trace or identify the fund? It is not necessary to identify the particular money. (*Lincoln v. Morrison*, 64 Neb. 822, 90 N. W. 905, 57 L. R. A. 885; *State v. Bruce*, 17 Ida. 1, 134 Am. St. 245, 102 Pac. 831, L. R. A. 1916C, 1; *Sherwood v. Central Michigan Savings Bank*, 103 Mich. 109, 61 N. W. 352.)

If the receiver came into possession of the fund, and it be decided that the same is a trust fund, and has become mingled with the other funds of the bank by the unlawful act of an officer of the bank, then plaintiff has sufficiently traced and identified the fund. (3 R. C. L., sec. 180, and cases cited.)

Scatterday & Van Duyn, for Respondents.

Agency gives the right to make a general deposit. Mr. Lore had an implied authority to make a general deposit in the bank in the name of whoever owned this money, whether it be the plaintiff in the action or whether it be the son. In either capacity, the deposit was lawfully made. (31 Cyc. 1335, 1340, 1344.)

If we consider Mr. Lore as a bailee for the benefit of either of the Russells, he was in duty bound to take care of the proceeds of the balance received by him in the ordinary, careful and usual manner. (5 Cyc. 177, 184.)

A trust depositor must show by presumption of law or otherwise that his fund has been preserved in the hands of the assignee or receiver as an increase in the assets of the estate from which it may be taken without infringement of the rights of general creditors. (*Bradley v. Chesebrough*, 111 Iowa, 126, 136, 82 N. W. 472; 1 Bowles on Banking, p. 191; *Bellevue State Bank v. Coffin*, 22 Ida. 210, 226, 125 Pac. 816.)

It is absolutely necessary for the plaintiff to prove, before he can recover the alleged trust fund, first: That the receiver came into the possession of a sufficient amount of money to

pay said claim; and, second: That the deposit was unlawfully made. Both of these points are necessary, and the appellant has shown neither. It is indisputable that he has failed to prove the first of these two necessary factors. (*Burroughs v. Johntz*, 57 Kan. 778, 48 Pac. 27; *Cherry v. Territory*, 17 Okl. 221, 89 Pac. 192, 195, 8 L. R. A., N. S., 1254.)

MORGAN, J.—W. W. Russell was indebted to the Bank of Nampa, Limited, in the sum of $1,666.20, and to secure the payment of the indebtedness certain notes, amounting to $3,250, secured by mortgage, executed and delivered to him by August Felise and Eveline Felise, were left at the bank. During July, 1913, he assigned these notes to appellant, his father, subject to the claim of the bank, for $1,400. On or about September 22, 1913, the bank received a draft from August Felise for $3,035 in settlement of the indebtedness; of this $1,666.20 was applied in payment of the indebtedness of W. W. Russell to the bank and the balance, $1,368.80, was placed to his credit, and the draft was forwarded by the bank for collection. On September 27, 1913, the bank, being insolvent, closed its doors, and in October was adjudged insolvent, and respondent, Smallwood, was named receiver. Appellant instituted this action to recover the $1,368.80 placed to the credit of W. W. Russell, claiming the same was his; that the bank had been instructed to notify him when the draft came and to deliver to him the balance, after payment of the W. W. Russell indebtedness. Appellant sought to have the assets of the bank impressed with a trust in his favor for that amount.

The court found that the balance of $1,368.80 was deposited by W. W. Russell in his own name for the use and benefit of appellant, and that such balance was held by the bank as a general deposit in due and ordinary course of business, and not as a special deposit, or trust fund, and that it was not, nor was any part of it, traced or identified and that there was no evidence before the court showing that the said

credit balance, or any part thereof, is capable of being identified or traced. Judgment was rendered for respondents, from which this appeal has been taken.

It is clear from the evidence that appellant himself did not authorize the deposit by the bank to the credit of W. W. Russell, and he contends that C. E. Lore, cashier of the bank, was instructed by W. W. Russell to not deposit the balance, but to notify appellant when the money arrived and, upon his appearance, to deliver it to him.

W. W. Russell testified that permission was given the bank to try to realize on the Felise notes; that Felise arranged to pay the notes and the draft was sent to the bank; that when Lore found out the draft was coming, he notified the witness and agreed to not deposit the balance left after paying his indebtedness, but to notify him when it arrived and to hold the balance for appellant. Lore testified that he knew of the assignment of the Felise notes to appellant; that shortly before the draft arrived W. W. Russell requested that he notify him when it came and to pay the balance over to his father; that when the draft did come he gave W. W. Russell credit for the full amount and charged his indebtedness against his account. He further testified:

"Q. Would that have the effect of leaving a deposit to Mr. W. W. Russell's account in the bank?

"A. Yes, sir.

"Q. And that was against the instructions of Mr. Russell, wasn't it?

"A. Yes, sir; it was.

"Q. Would you have honored a check drawn by W. W. Russell on that account?

"A. No, sir; I warned the assistant cashier not to do so.

"Q. Did you notify either the plaintiff C. P. Russell or W. W. Russell that the money had arrived?

"A. I did not. I don't think I did. . . . .

"Q. I believe you testified he specifically gave instructions that the money should not be deposited?

"A. Why, yes, I think he did, especially to his own account."

Aside from the testimony above referred to, there is no evidence concerning the arrangement made between W. W. Russell and the bank as to how the balance of the draft remaining after the payment of the Russell indebtedness was to be treated. This evidence established, as a fact, appellant's contention that such balance was to be paid over by the bank to him and that it was not to be deposited. Such balance then became a trust fund and not an asset of the bank. The relation of bailor and bailee was established between appellant and the bank, and not the relation of depositor and banker. (*Hall v. Beymer,* 22 Colo. App. 271, 125 Pac. 561; *Capital Nat. Bank v. Coldwater Nat. Bank,* 49 Neb. 786, 59 Am. St. 572, 69 N. W. 115; *In re Johnson,* 103 Mich. 109, 61 N. W. 352.)

The next question which arises is whether or not appellant has sufficiently traced the trust fund into the hands of the receiver, or into assets in his hands, upon which a trust should be impressed.

Respondents rely upon the case of *Bellevue State Bank v. Coffin,* 22 Ida. 210, 125 Pac. 816, wherein this court, quoting from *Insurance Co. v. Caldwell,* 59 Kan. 156, 52 Pac. 440, approved the following rule:

"The fund itself, or something into which it has gone, and which stands as its representative, must be on hand, subject to identification, and separable from the general assets, in order to charge the assignee with the trust; or, if the fund has been so commingled with the general assets as to be incapable of identification or tracing, the estate which came to the assignee must have been augmented or bettered in an appreciable and tangible way, in order to charge it with the trust. The mere saving of the estate by the discharge of general indebtedness otherwise payable out of it, or the payment of the current expenses of the business, is not an augmentation or betterment of the estate, within the meaning of the rule. If the estate has not been increased by specific additions to it, or if what previously existed has not been improved or rendered more valuable, it has not been impressed with the trust claimed."

Applying that rule to the facts in the case of *Bellevue State Bank v. Coffin,* the court held that the property which came into the hands of the receiver could not be impressed with the trust in favor of the appellant therein and said: "There is no proof and no finding to the effect that the bank's estate was in any way bettered or augmented by reason of the application of the trust fund; and because of that we think the judgment should be affirmed."

This case is readily distinguishable from *Bellevue State Bank v. Coffin, supra.* In that case the sum of $2,500 in currency had been loaned to a bank while it was a going concern. When it was closed, by reason of its insolvency, only $643.75, of which but $85 was currency, no part of which could be identified as a portion of the $2,500 loaned, was found to be in its possession, nor was it shown that the estate of the bank had been in any manner augmented by the loan, within the meaning of the rule above quoted.

In this case it is clear that while the draft in payment of the Felise indebtedness reached the bank before it closed its doors and was, in direct violation of instructions, placed to the credit of W. W. Russell, the actual cash represented by it did not come into the hands of the bank while it was a going concern but, it must be inferred from the facts admitted and those proven, that appellant's portion of it actually came into the hands of the receiver and constitutes a trust fund capable of withstanding the rule announced in the case of *Insurance Co. v. Caldwell, supra,* and approved by this court in *Bellevue State Bank v. Coffin,* above cited.

Among the facts found by the trial judge is the following: "That before the suspension of the Bank of Nampa, Limited, the draft was received by the Bank of Nampa from the mortgagees in the Felise mortgage for the payment of said mortgage, and that at the time of the failure of the said Bank of Nampa, Limited, no return had been received, showing the payment of the said draft." This finding is based upon undisputed evidence in the record.

The following allegation appears in the answer: "Defendants, and each of them, deny that the said sum of $1,368.80 is not an asset of the defunct and insolvent Bank of Nampa,

Limited, but allege the fact to be that the draft hereinbefore mentioned, in the sum of money that is represented, which was deposited to the account of W. W. Russell, was, and is, to the amount that the same, or any part of the same, was on hand at the time of the insolvency of the Bank of Nampa, Limited, an asset of the said Bank of Nampa; and defendants, and each of them, deny that the said alleged sum of $1,368.80 is a special fund held by the defendants, or either of them, in trust for the plaintiff herein, but allege that any sum at all that may remain of the original amount of the said draft of $3,035.00 which was deposited to the account of W. W. Russell, is now, and always has been, an asset of the Bank of Nampa, and that no part of the same is now, or ever has been, held in trust for the plaintiff herein, or any other person on his behalf.''

It is not contended that the draft was presented and payment thereof refused. Upon the other hand, it is alleged in the answer that the balance remaining, after the payment of the indebtedness of W. W. Russell, became and is an asset of the bank. Respondents are not now, therefore, in position to contend that the bank's assets have not been augmented, and its condition bettered, to that extent. That allegation, together with the undisputed testimony of W. W. Russell and C. E. Lore, heretofore commented upon, and the finding of the trial judge, to the effect that the draft was received by the bank, and that at the time of its failure no return had arrived showing that it had been paid, permits of the conclusion, only, that the money represented by the draft did not reach the bank prior to the time it suspended business, but actually came into the hands of the receiver; that the balance of $1,368.80 remaining after the payment of the W. W. Russell indebtedness constitutes a trust fund for which appellant is entitled to recover.

The judgment of the trial court is reversed, with the direction that judgment be entered in favor of appellant in accordance with the views herein expressed. Costs are awarded to appellant.

Budge, C. J., and Rice, J., concur.