## COLUMBIA BASIN WOOL WAREHOUSE CO. v. FIRST NAT. BANK OF FAIRFIELD, IDAHO, et al.

(District Court, D. Idaho, S. D.   April 30, 1923.)

No. 984.

Banks and banking ⟐134(5)—Mortgagee entitled to waive tort and follow proceeds of sale of property into hands of bank knowingly receiving them.

Where chattel mortgagor delivered draft for proceeds of sale of mortgaged sheep to bank, with instructions to collect it and send proceeds to mortgagee, but bank applied proceeds on indebtedness of its own, mortgagee could waive the tort and follow proceeds, to extent of its claim, into bank's hands by suit in equity.

In Equity. Suit by the Columbia Basin Wool Warehouse Company against the First National Bank of Fairfield, Idaho, and another. Decree for plaintiff.

Bissell & Bird, of Gooding, Idaho, and Jay Bowerman, of Portland, Or., for plaintiff.

J. W. Edgerton, of Pocatello, Idaho, and Sullivan & Sullivan, of Boise, Idaho, for defendants.

DIETRICH, District Judge. The equities of the controversy are scarcely open to question. The fund in dispute represents the proceeds of the sale of sheep upon which plaintiff had a valid mortgage duly recorded. Without the plaintiff's consent the sheep were sold by the mortgagor, who delivered the draft for the purchase price to the defendant bank, with instructions to send it, or rather to send the proceeds, after collection, to the plaintiff, to apply on the mortgage indebtedness. In violation of this understanding the bank applied part of the money, when collected, to the discharge of the mortgagor's indebtedness to it, and the balance it placed to his credit. Shortly afterwards the bank closed, and its affairs are being wound up by a receiver, who declines to recognize plaintiff as a creditor. The plaintiff is not asking a preference, but prays only that it be given the footing of a general creditor for the amount of money diverted and appropriated as above explained.

The officers of the bank had had something to do with the execution of the chattel mortgage, and had actual, as well as constructive, knowledge of its existence, with reason to believe, and, as I am convinced, they did believe, the money came from the sale of the mortgaged property. The only question seriously argued relates to the remedy, and, if the view of defendants prevails, a mortgagee is practically without remedy against such misconduct on the part of a bank. True, he may sue the mortgagor for conversion, but the latter is usually insolvent in such a case. Theoretically he may follow and replevin the mortgaged property, but ordinarily the property is dissipated before he learns of the wrong. He may possibly sue the purchaser, but the purchaser is often in a distant jurisdiction, and not infrequently insolvent. The bank, however, though willfully and knowingly appropriating all

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the fruits of the wrongdoing, is practically beyond the reach of the courts, according to the defendants' contention.

While this view seems to have support in some of the decided cases, I am disinclined to yield to it. Technicalities and considerations of mere form aside, I see no substantial reason why the mortgagee may not waive the tort and pursue the proceeds of the mortgaged property, up to the amount of its valid claim, into the hands of one who knowingly and wrongfully receives it. In equity and good conscience this money belongs to the plaintiff, and the court ought not for light reasons to decline to assist him in getting it. Were there any contractual relation between the parties, perhaps the most appropriate form of proceeding would be an action for money had and received; but, as is well recognized, in its spirit and purpose such an action is very much like a suit in equity to recover the fund, and, there being a want of privity between the parties, the course here adopted is thought to be the more appropriate. Either directly or in principle the following citations are thought abundantly to support this view: National Bank of Baltimore v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693. Russell v. Bank of Nampa, 31 Idaho, 59, 169 Pac. 180; Cone v. Ivinson, 4 Wyo. 203, 33 Pac. 31, 35 Pac. 933; Cady v. Bank, 46 Neb. 756, 65 N. W. 906; Alter v. Bank, 53 Neb. 223, 73 N. W. 667; Keel v. Levy, 19 Or. 450, 24 Pac. 253, 254; Imperial Savings Bank v. Huff, 126 Ark. 281, 190 S. W. 116. Crosby v. Fresno, 30 Cal. App. 308, 158 Pac. 1070. 11 Corp. Jur., pp. 633, 635.

Bank of Baltimore v. Life Insurance Co., supra, was a suit in equity brought by the life insurance company to recover a balance of $11,-000 deposited by its general agent, Dillon, in an account in the bank carried in the name of Dillon, General Agent. The money had been seized by the bank to pay a note which Dillon individually owed it. Among other things, the court said:

"It is objected that the remedy of the complainant below, if any existed, is at law and not in equity; but the contract created by the dealings in a bank account is between the depositor and the bank alone, without reference to the beneficial ownership of the moneys deposited. No one can sue at law for a breach of that contract, except the parties to it. There was no privity created by it, even upon the facts of the present case as we have found them, between the bank and the insurance company. The latter would not have been liable to the bank for an overdraft by Dillon, and no action at law upon the account could have been maintained. But although the relation between the bank and its depositor is merely that of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, to whom in equity does it beneficially belong."

And again:

"It is undeniable that equity will follow a fund through any number of transmutations and preserve it for the owners as long as it can be identified. And it does not matter in whose name the legal right stands. If money has been converted by a trustee or agent into a chose in action, the legal right to it may have been changed, but equity regards the beneficial ownership. It is conceded, for the cases abundantly show it, that when the bank received the deposits it thereby became indebted to the depositor. The debt might have been paid in answer to his checks, and thus the liability extinguished, in the absence of interference by his principal to whom the money belonged. But surely it cannot be maintained, when the principal asserted the right to the money before the repayment and gave notice to the bank of their ownership,

and of their unwillingness that the money should be paid to their agent, his right to claim it had not ceased. A bank can be in no better situation than any other debtor. * * * In our opinion, the equity of the case, upon the merits, was manifestly with the appellee."

The equities here are undoubtedly with the plaintiff, and, the remedy adopted being an appropriate one, a decree will be entered granting the relief prayed for. To hold otherwise would be to give encouragement to the unwholesome and, as I am constrained to believe, growing practice by which, substantially in the manner here shown, the security of a mortgagee is, to his hurt, wrongfully diverted to the satisfaction of unsecured claims against the mortgagor, held by a bank of which he is a customer.