EL TESORERO DE PUERTO RICO, demandante y apelado, *v.* BANCO COMERCIAL DE PUERTO RICO, demandado y apelado; CIPRIANO MANRIQUE, peticionario interventor y apelante.

No. 6168.—*Sometido:* Marzo 15, 1933. *Resuelto:* Marzo 9, 1934.

*E. Rincón Plumey*, abogado del apelante; *F. Ochoteco*, abogado del apelado; *Hon. Procurador General Benjamin J. Horton (Charles E. Winter* en el alegato) y *R. Cordovés Arana, Subprocurador*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Cipriano Manrique inició una acción en cobro de dinero contra Eliseo Diez en la Corte de Distrito de San Juan, y para asegurar la efectividad de la sentencia, embargó la suma de $4,500 que había depositado el referido Eliseo Diez el día 3 de octubre de 1931 en la sucursal del Banco Comercial de Puerto Rico en Cayey, a la orden de Andrés Roselló, quien no aceptó el depósito constituído a su favor. Estando el banco bajo administración judicial para la fecha en que se practicó el embargo, se apercibió al síndico del mismo para que retuviera en su poder la cantidad mencionada a fin de asegurar a dicho demandante la efectividad de la sentencia que trataba de obtener.

Al depositar esta suma, Eliseo Diez obtuvo un certificado de depósito librado por el Banco Comercial de Puerto Rico, que copiado literalmente dice así:

"Banco Comercial de Puerto Rico.—Cayey, P. R.—octubre 3 de 1931.—$4,500.00.—No. 1816.—Eliseo Diez ha depositado en este Banco Cuatro Mil Quinientos Dollars—a la orden de Andrés Roselló, pagaderos en moneda corriente, previa devolución del presente res-

guardo debidamente endosado.—G. J. Collazo, Interventor.—P. Fernández Colón, Subgerente.—Certificado de depósito no sujeto a cheques.''

Con fecha 15 de abril de 1932 el aquí interventor radicó una moción solicitando que la Corte de Distrito de San Juan ordenara al síndico de dicha institución bancaria que procediera a entregar la suma de $2,432.34 al márshal de este tribunal, a fin de que el citado funcionario la retuviera en su poder como consecuencia del embargo trabado por vía de aseguramiento de efectividad de sentencia en el caso seguido por Cipriano Manrique como demandante contra Eliseo Diez como demandado, siendo dicha suma parte de la cantidad acreditada en el referido certificado.

Con posterioridad el interventor radicó una moción complementaria donde hizo constar que por vía de ejecución de sentencia en el caso seguido contra Eliseo Diez como demandado, se había sacado a pública subasta y adjudicado al interventor el certificado de depósito librado por el Banco Comercial de Puerto Rico a favor de Andrés Roselló. Solicitó nuevamente el interventor que se ordenara por el tribunal al síndico del banco el inmediato pago del importe del referido certificado de depósito.

El síndico del Banco Comercial de Puerto Rico se opuso a las pretensiones del interventor, alegando que un certificado de depósito no constituía un crédito preferente o ''trust fund'', y que debían desestimarse las mociones presentadas por el interventor, por ser el mismo un mero acreedor común.

La Corte de Distrito de San Juan declaró sin lugar las mociones referidas y el interventor Cipriano Manrique interpuso recurso de apelación. Alega el apelante que la corte erró al aplicar indebidamente leyes bancarias de los Estados Unidos, prescindiendo de nuestra legislación, y al declarar, con vista del certificado de depósito, que el mismo no constituía un depósito propiamente dicho, no teniendo otro alcance que el de un simple pagaré que sólo establece la relación de deudor y acreedor. Entiende el apelante que la decisión de

la corte inferior está en contra de la sección 33 de la Ley de Bancos de Puerto Rico, del artículo 306 del Código de Comercio y de los artículos 1667 y demás concordantes del Código Civil.

De acuerdo con nuestro Código Civil se constituye el depósito desde que uno recibe la cosa ajena con la obligación de guardarla y de restituirla. El depositario está obligado a guardar la cosa y restituirla cuando le sea pedida, y no puede servirse de la misma sin permiso expreso del depositante. Cuando el depositario tiene permiso para servirse o usar de la cosa depositada, el contrato pierde el concepto de depósito y se convierte en préstamo o comodato.

Claramente se ve que el depósito tiene una finalidad, que es la custodia de la cosa entregada y su devolución al depositante. Apunta Manresa, citando a Portier, que para distinguir este contrato de depósito de los demás reales es preciso ver ante todo la finalidad perseguida por las partes al contratar. No hay depósito cuando el fin principal no ha sido confiar a la parte la custodia y conservación de la cosa y por el contrario existirá este contrato cuando el fin primordial de la entrega sea la guarda de la cosa.

El ilustre comentarista español llama la atención hacia la diferencia que existe entre la representación característica del mandato y la simple custodia de las cosas, nota distintiva del depósito, expresando que los autores y la jurisprudencia a veces han solido confundir dichos contratos. La realidad, según Manresa, ofrece muchos casos de confusión si no se aplica la regla de interpretación apuntada por Portier.

Glosando el mismo comentarista los artículos 1767 y 1768 del código español, equivalentes a los artículos 1667 y 1668 de nuestro Código Civil, edición de 1930, se expresa así:

"En cuanto a los efectos del consentimiento del depositante para que el depositario pueda servirse de la cosa, muy poco tenemos que manifestar para dejar esclarecido dicho extremo; pues diciendo el texto legal que tal consentimiento implica la pérdida del carácter de depósito en la relación contractual, adquiriendo, según los casos, la

naturaleza de un comodato o de un préstamo, parece que no haya más que decir, sino que ocurrirá lo primero cuando el depósito se hubiere hecho de cosas no fungibles; y tendrá lugar la segunda modalidad apuntada, cuando de cosas fungibles se trata. Ahora bien, ¿no es depósito de cosas fungibles, sujetas a peso, número o medida, el que se constituye en los Bancos? ¿No lo es el dinero que se entrega, no en caja cerrada, sino a la mano, y sin otro requisito que el de su recuento? ¿Estarán, en su virtud, comprendidos estos depósitos en la prescripción del art. 1768, cambiando su naturaleza jurídica, para convertirse en un préstamo mutuo?" 11 Manresa, 662, 663.

Recuerda Manresa que el artículo 1768 es copia literal del artículo 1671 del proyecto de código de 1851, y reproduce el comentario de García Goyena sobre este artículo y el anterior, que dice así:

"Desterramos, pues, el depósito *irregular;* cortamos la cuestión de si el depósito de cosas fungibles hecho a peso, número o medida, envuelve tácitamente el permiso de usar de ellas; si en el permiso *presunto* o *expreso* es además necesario usar de él para que el depósito se convierta en mutuo, y cortamos la diferencia entre el permiso *expreso* al tiempo del contrato, y el *expreso* posterior. En suma, el permiso ha de ser expreso, y en tal caso es préstamo en las cosas fungibles y comodato en las que no lo son."

De modo que de acuerdo con el Sr. García Goyena, para que el depósito de cosa fungible cambie su naturaleza jurídica y se convierta en préstamo, es necesario el consentimiento expreso del depositante para servirse o hacer uso de la cosa. Es de notarse que ambos contratos, el préstamo y el depósito de cosa fungible, llamado irregular, tienen de común su carácter real, la trasmisión del dominio, y la restitución de la cosa en otra equivalente. Así lo hace notar Manresa, quien, basado en la interpretación de García Goyena, lamenta que se hayan eliminado del código los depósitos irregulares o de cosas fungibles. El comentarista español admite la trasmisión del dominio en el depósito de cosas fungibles.

El Código de Comercio no habla de consentimiento expreso, sino de asentimiento. El artículo 227 de dicho código dice así:

"Siempre que, con asentimiento del depositante, dispusiere el depositario de las cosas que fueren objeto de depósito, ya para sí o sus negocios, ya para operaciones que aquél le encomendare, cesarán los derechos y obligaciones propios del depositante o depositario, y se observarán las reglas y disposiciones aplicables al préstamo mercantil, a la comisión y al contrato que en substitución del depósito hubieren celebrado."

El artículo 228 del mismo código dispone que "los depósitos verificados en los bancos, y en las corporaciones o individuos que tengan almacenes de depósitos, se regirán, en primer lugar, por los preceptos de las leyes de bancos y de almacenes de depósito, respectivamente, en segundo por las prescripciones de este código, y últimamente, por las reglas del derecho común que sean aplicables a todos los depósitos."

Estudiadas conjuntamente las disposiciones del Código Civil que hablan de consentimiento expreso y las del Código de Comercio que hablan simplemente de asentimiento, surge a la mente la pregunta formulada por Manresa con respecto a los depósitos de dinero en una institución bancaria. Sabido es que el dinero que se entrega a un banco, cuando no tiene el carácter de un depósito especial que pueda ser identificado, se confunde con el fondo general de dicho banco. Este depósito así confundido no puede devolverse en la misma moneda; su restitución se lleva a cabo en otra equivalente de la misma especie y calidad. El dinero no deja de ser una cosa fungible, aun cuando el uso no implica su destrucción. El uso del dinero consiste en gastarlo, en disponer del mismo, en invertirlo, todo lo cual implica su verdadero consumo, mediante actos de enajenación. El consumo, cuando la cosa se destruye por el uso, se llama natural, y civil cuando se trata de un consumo ficticio, como el uso del dinero. La persona que deposita dinero en un banco asiente al uso del mismo cuando no se trata de un depósito especial o de carácter es-

pecífico. Este asentimiento no podrá llamarse técnicamente un asentimiento expreso; pero es evidente y palpable y no deja lugar a dudas con respecto a la intención del depositante. Las cantidades así entregadas pasan a formar parte del fondo general que el banco necesariamente utiliza en sus transacciones, ejercitando actos de dominio sobre la totalidad de dicho fondo. En el curso ordinario de sus operaciones el banco mantiene sus fondos en continuo movimiento. Esto lo saben las personas que llevan allí su dinero, y si quieren evitar que el banco actúe como dueño deben expresar su intención por medio de un depósito especial o de carácter específico.

Estos principios, que se ajustan a las disposiciones del Código de Comercio y que responden a una necesidad y conveniencia en las transacciones con las instituciones bancarias, han sido firmemente establecidos por la jurisprudencia americana. De acuerdo con numerosas decisiones el dinero que generalmente se deposita en un banco pasa al dominio del mismo, estableciéndose la relación de acreedor y deudor entre el banco y su cliente. Una vez entregado al banco el dinero deja de pertenecer al principal, convirtiéndose en el dinero del banquero, el cual está obligado a devolver su equivalente, pagando una suma similar a la depositada, cuando así se demande. El dinero colocado bajo la custodia de un banquero es, para todas las intenciones y propósitos, el dinero del banquero, quien puede hacer con él lo que le plazca. No es culpable el banquero de quebrantar la confianza en él depositada por el hecho de hacer uso del dinero; no es responsable al principal si lo pone en peligro y se embarca en operaciones peligrosas; no está obligado a conservarlo como la propiedad del principal, pero es responsable por su montante, ya que al recibir el dinero se ha obligado a devolver al principal, cuando se lo demande, una suma equivalente a la que fué colocada en sus manos. Siendo ésta la relativa situación de banquero y cliente, el primero no es un agente

316

sino un deudor.   Lord Chancellor Cottenham, en *Foley* v. *Hill,* 2 H. L. Cas. 578.

Hay que distinguir, sin. embargo, entre depósitos generales y depósitos especiales.   Es en los primeros que el dominio de la cosa se trasmite al banco.   En los depósitos especiales el dominio se conserva en el depositante.   Cuando se deposita dinero u otra própiedad en un banco para que se restituya la misma moneda y la misma propiedad, el depósito se llama especial.   Un caso típico de depósito especial es aquél en que el dinero se entrega al banco en una caja o saco, en el entendido, expreso o implícito, de que debe restituirse la misma cosa y no su equivalente.   Hay casos, sin embargo, en que tal depósito puede existir cuando el deber del depositario es conservar, no los mismos billetes y la misma moneda, sino una suma equivalente que debe conservarse intacta para el uso del depositante.   La jurisprudencia moderna se manifiesta decididamente en favor de esta doctrina.   La vieja regla que requiere una identificación del fondo específico ha sido modificada de tal modo que hoy el dinero especialmente depositado puede devolverse en una suma equivalente a la cantidad depositada, sin que sea absolutamente necesaria la conservación de la misma moneda o billetes para establecer la identidad.   *Woodhouse* v. *Crandall,* 197 Ill. 104, 64 N. E. 292, 58 L.R.A. 385; *Genesee Wesleyan Seminary,* v. *U. S. Fidelity & Guaranty Co.,* 247 N. Y. 52, 159 N. E. 720, 56 A.L.R. 964 n; *Carlson* v. *Kies,* 75 Wash. 171; *Fogg* v. *Tyler,* (Me.) 82 Atl. 1008; *Shopert* v. *Indiana,* 41 Ind. App. 474; *Covey* v. *Cannon* (Ark.), 149 S. W. 514; *Massey* v. *Fisher,* 62 Fed. 958; *Schumacher* v. *Harriet,* 52 Fed. (2d) 817; *Bishop* v. *Mahoney,* 73 N. W. 6.

El depósito general debe hacerse efectivo cuando se demande el pago.   A veces es muy difícil distinguir un depósito general de un depósito especial.   La dificultad estriba en determinar cuál fué la intención de las partes.   Los depósitos, sin embargo, se estiman generales a no ser que se haya convenido lo contrario.   El hecho de que las partes hayan

intentado que el dinero depositado siga el curso ordinario de las operaciones bancarias es un elemento a considerar para determinar la naturaleza del depósito.

■ Técnicamente existe alguna diferencia entre un depósito especial y un depósito específico. La realidad es que surten el mismo efecto, que se conserva el título en el depositante, y que puede ser recuperado como un depósito *in trust*. Mitchie, en la página 638, tomo quinto, de su obra "Banks and Banking", dice, refiriéndose a este depósito específico:

> "Un depósito en un banco para un propósito específico o particular algunas veces se denomina depósito específico. Se ha dicho que un depósito para un propósito específico no es ni general ni totalmente especial, sino que participa de la naturaleza de un depósito especial en el sentido de que el título permanece en el depositante y no se trasmite al banco. La consecuencia es que el dinero, si no se aplica bien, o si se aplica mal, puede ser recobrado como un depósito *in trust*."

Cuando la institución bancaria asume la obligación de destinar el fondo al propósito intentado, no puede haber trasmisión de título, ya que el banco carece de autoridad para disponer del fondo. La trasmisión del título es la trasmisión del dominio, y si el banco queda obligado a dedicar el dinero al propósito especificado por el depositante, es claro que no tiene siquiera un dominio limitado sobre la suma depositada.

■■ Entiende el interventor que es éste un depósito que de acuerdo con la ley debe ser preferido y satisfecho por el síndico del Banco Comercial. Con respecto a prioridad, la clasificación del depósito en general o especial depende del contrato resultante del mutuo entendido e intención de las partes, o de circunstancias bastantes para crear una relación de depósito. Mitchie, "Banks & Banking", tomo 3, pág. 257.

Como hemos visto el certificado de depósito expedido por el banco no se aparta de lo ordinario. De acuerdo con la jurisprudencia un certificado de depósito es un reconocimiento que por escrito hace un banco de haber recibido una suma de dinero en depósito, con la promesa de pagarla al depositante

o a su orden, o a alguna otra persona o a su orden, creándose desde este momento la relación de deudor y acreedor entre el banco y el depositante. *Maryland Finance Corporation* v. *People's Bank,* 128 S. E. 295; Mitchie, "Banks and Banking", tomo 5 pág. 598.

██ Varios son los casos que hemos consultado durante el tiempo que hemos dedicado al estudio de este asunto. Es general el principio de que un certificado de depósito crea una relación de deudor y acreedor entre el banco y el depositante. No cabe sostener otro criterio en ausencia de prueba en contrario. No hemos encontrado un caso que mantenga una doctrina opuesta. En apoyo, sin embargo, de que el dinero depositado por Eliseo Diez en el Banco Comercial constituye un fondo específico, se citan los casos de *Prewett* v. *First Nat. Bank of Hagerman,* 262 Pac. 1057; *Russell* v. *Bank of Nampa,* 169 Pac. 180; *Powder Valley State Bank* v. *Hudleson,* 144 Pac. 494; *Iowa Mutual Liability Ins. Co.* v. *De la Hunt,* 196, N. W. 17; *Carlson* v. *Kies,* 47 L.R.A. (N. S.) 317; *Hitt Fire Works Co.* v. *Scandinavian American Bank,* 195 Pac. 13; *Piano Manufacturing Co.* v. *Auld,* 86 Am. St. Rep. 769; *State* v. *Grills,* 85 Atl. 281; *People* v. *City Bank of Rochester,* 96 N. Y. 32; *Anderson* v. *People's Bank,* 112 Cal. 598. Hemos estudiado estos casos con cuidadosa atención, y ninguno de ellos, en nuestro sentir, sostiene una conclusión semejante. En algunos no hubo controversia con respecto al carácter del depósito ni se decidió ninguna cuestión sobre preferencia de crédito. En todos la prueba fué abundante. Discutiremos aquellos en que parece haberse puesto cierto énfasis para sostener la teoría del depósito específico.

La cuestión debatida en el caso de *Prewett* v. *First Nat. Bank of Hagerman,* resuelto por la Corte Suprema de Idaho, fué una de prescripción. Henry Hosac compró a M. M. Prewett en venta pública diez y nueve cabezas de ganado. Para garantizar la obligación contraída, Hosac hipotecó el mismo ganado. La venta fué escriturada por C. W. Stringfield, entonces cajero del banco demandado, First National Bank. El

pagaré y la hipoteca fueron preparados por él, ejecutados a su ruego y depositados en el banco hasta junio o julio de 1921. En marzo de 1920, el demandante endosó el pagaré a favor de J. W. Miller, volviendo a adquirirlo en 1921 y permaneciendo desde entonces en posesión del mismo.

Hosac vendió después doce cabezas de ganado, diez de las cuales pertenecían al ganado hipotecado. Hosac dió conocimiento al demandante de que el dinero recibido por el ganado cubierto por la hipoteca, ascendente a $555.50, había sido depositado en el banco para el mencionado Prewett. Un cheque, representando el producto total de la venta, fué endosado por Hosac y entregado al banco con instrucciones de aplicar los $555.50 al pago del pagaré otorgado a favor de Prewett. Hosac explicó al banco que los $555.50 eran el producto de la venta del ganado cubierto por la hipoteca. El cajero Stringfield colocó el dinero en la cuenta de Hosac, esperando que éste le diera a Prewett un cheque por dicho importe. En marzo 15 de 1920, el banco cambió de personal. Stringfield se retiró como cajero, y un señor llamado H. O. Frazier ocupó su posición. Stringfield hizo saber al nuevo cajero y al nuevo presidente del banco que el dinero recibido como producto del ganado cubierto por la hipoteca a favor de Prewett, depositado entonces a nombre de Hosac, pertenecía a Prewett, y que el banco no tenía derecho a disponer del mismo. El nuevo cajero, Frazier, aplicó no obstante esta suma de $555.50 al pago de una obligación contraída por Hosac a favor del banco. Prewett inició una acción para recobrar los $555.50 depositados en el banco. El jurado rindió un veredicto en favor del demandante.

La cuestión envuelta en el caso citado en nada se relaciona con el carácter del depósito. El demandado alegó que la acción había prescrito y la corte inferior desestimó esta defensa. La Corte de Apelación sostuvo que bajo las disposiciones de la ley, cuando se promueve una acción en cobro de dinero o propiedad depositados en poder de un banco o banquero, la prescripción no comienza a correr hasta que se

demande el pago por el depositante. Sostuvo también la corte que estas disposiciones se aplican lo mismo a depósitos especiales que a depósitos generales, y luego, girando fuera de la esfera de la cuestión debatida, añade que cuando el dinero se deposita en un banco para ser pagado a una tercera persona, tal depósito es un depósito especial. A raíz de esta conclusión se citan los casos de *Russell* v. *Bank of Nampa,* supra, y *Powder Valley State Bank* v. *Hudleson,* supra. Convenimos que cuando se deposita dinero con un propósito determinado a favor de una tercera persona, el depósito tiene el mismo carácter de un depósito específico. Confirman esta teoría los dos casos citados por la Corte Suprema de Idaho.

En el caso de *Russell* v. *Bank of Nampa,* supra, se dice que cuando una parte que es deudora de un banco deposita en el mismo como garantía pagarés pertenecientes a dicha persona, y autoriza que se cobren y se aplique una porción de los productos al pago de su deuda, pero instruye que no se deposite el balance en el banco, sino que se entregue a una tercera persona, tal depósito es especial y no general, aunque el cajero, en contra de las instrucciones recibidas, deposite el balance en el banco. No puede ofrecerse un ejemplo más claro de un depósito específico.

En el caso de *Powder Valley State Bank* v. *Hudleson,* supra, la prueba demostró claramente cuál fué la intención de las partes. Es innecesario relatar detalladamente los hechos en este caso que son bastante extensos. El banco ejercitó una acción para cobrar una obligación suscrita a su favor por los demandados. Estos alegaron el pago de dicha obligación y contrademandaron, reclamando $1,000 que el banco recibió y aplicó al pago de una obligación contraída a su favor por la firma Metzler–Hegsted Lumber Company. Según la prueba producida, se instruyó al banco que cuando recibiera cierto dinero lo destinara a pagar un cheque expedido a favor de los demandados, y el banco, lejos de hacerlo así, desobedeciendo las instrucciones específicas que se le dieron, aplicó el dinero al pago de la obligación que había suscrito

la referida firma, en vez de hacer efectivo el cheque de los demandados. Aquí la intención de las partes es manifiesta en cuanto al carácter específico de las instrucciones recibidas por el banco, a juzgar por el veredicto del jurado que apreció la prueba y resolvió el caso a favor de los demandados.

En el caso de *Carlson* v. *Kies,* supra, resuelto por la Corte Suprema de Washington, los hechos son los siguientes: Fred Olson era administrador de la herencia de Carl Peter Johnson y apoderado de los herederos Johanna Paulina Carlson y Nora Danielson. Como tal apoderado obtuvo posesión de la suma de $3,070.60 perteneciente a dichos herederos. Uno de ellos residía en Suecia y el otro en Nueva York. Deseando retener el dinero hasta que los herederos le devolvieran los documentos que les fueran enviados, acusando recibo, colocó el dinero en el banco y obtuvo un recibo escrito a su ruego y firmado por el cajero, que decía así: "Vancouver, Wash., Dec. 14, 1910. Received of Fred Olson three thousand seventy & 60/100 dollars, to be held until receipts are received from heirs. Then same to be forwarded by bank draft. G. W. Daniels, Cashier. $3,070.60." El dinero fué mezclado con los fondos del banco, el cual cerró sus puertas cinco días después de recibirlos. El examinador se hizo cargo de los asuntos del banco hasta que se nombró un síndico. Pocos días después, el señor Olson recibió los recibos, los presentó al banco y demandó pago, que le fué negado. El cajero admitió que él sabía que el dinero pertenecía a los herederos de Johnson. El caso fué juzgado por la corte. En adición a los hechos expuestos, la corte declaró que el dinero evidenciado por el recibo había sido colocado en el banco para su custodia (*safe-keeping*) pendiente del recibo de los herederos, debiendo entonces ser enviado a dichos herederos por letras del banco; que el banco mezcló el dinero con sus fondos y que con anterioridad al comienzo de la causa el síndico se negó a cumplir con la demanda de pago. El Sr. Olson testificó que le dijo al cajero que deseaba dejar el dinero en el banco para su custodia, pendiente de los recibos de los he-

rederos, cuando él compraría las letras para remitirlas a los mismos. El cajero admitió que expidió y entregó el recibo a ruego del Sr. Olson. Dijo, además, que al mismo tiempo libró un certificado de depósito, que permaneció en el banco y que fué ofrecido al Sr. Olson después que el examinador se había hecho cargo de los negocios del banco. Olson declaró que nada se dijo acerca de un certificado de depósito al tiempo de ser depositado el dinero en el banco, pero que fué ofrecido a él en cambio del recibo después que el examinador había asumido el control.

No es necesario hacer grandes esfuerzos de imaginación para llegar a la conclusión de que en este caso se depositó el dinero en el banco para que lo tuviese en custodia hasta que se recibiesen los recibos de los herederos, a quienes debía trasmitirse la suma depositada mediante letras del banco. El depósito es específico. La corte llegó a esta conclusión en virtud de la prueba producida. Comoquiera que se ha dado alguna importancia a lo dicho por la corte en este caso, vamos a permitirnos copiar a continuación sus propias palabras:

"Un depósito en un banco es general o especial. Cuando se hace un depósito general, se acredita a la cuenta del depositante sujeto a su cheque, o evidenciado por un certificado pagadero en demanda o a plazos. El título al depósito en tales casos pasa al banco, que viene a ser el deudor del depositante. Por otra parte, cuando un banco acepta un depósito especial se convierte en depositario y retiene el dinero sujeto al depósito. El recibo mismo produce evidencia fuerte, si no concluyente, de un depósito especial. Demuestra que el dinero se colocó en el banco para un propósito especial. Fortificado por la evidencia del depositante y las circunstancias admitidas aquí, es obvio que ambas partes en la transacción intentaron hacer un depósito especial y no uno general. Consecuentemente se concluye que el banco retuvo el dinero, no como un deudor general, sino en una capacidad fiduciaria."

Vemos que la corte califica de general un depósito evidenciado por un certificado pagadero a su entrega o a plazos, y vemos también que se basa en la evidencia aportada para llegar a la conclusión de que el depósito era especial.

Dice la corte que el recibo es una evidencia fuerte de un depósito especial, pero es claro que no se refiere a un certificado de depósito como el expedido por el Banco Comercial, que es un instrumento negociable, pagadero a la orden de la persona a cuyo favor se expidió. La corte se refiere a un recibo corriente, como el expedido por el cajero del Banco Comercial de Vancouver, y a la prueba que se ofreció para demostrar que las partes intentaron constituir un depósito especial y no general.

En el párrafo que sigue al que anteriormente hemos transcrito, dice la misma corte:

"Un depósito no es especial a menos que así lo haga el depositante, o que se realice en una capacidad particular. En el uso de los depósitos realizados con el fin de que sean aplicados a un propósito particular el Banco actúa como mandatario del depositante, y si deja de aplicar el fondo en absoluto o lo aplica erróneamente, puede ser recobrado como un depósito *in trust*. Este principio fué reconocido por esta corte en el caso de Blake, donde se dijo: 'Si el fondo se hubiese entregado al banco, no como un depósito general, sino para un propósito particular, hubiese sido un depósito en el primer caso (*trust fund*) y el título no habría pasado al banco; pero aun entonces no hubiera podido ser recobrado sin demostrarse que había ido a parar a poder del síndico'."

En el caso de *Piano Manufacturing Co.* v. *Auld*, supra, el banco gestionó y obtuvo el cobro de un pagaré que le fué entregado por el demandante para este propósito poco antes de cerrar sus puertas. Se reclamó la suma de $879 a que ascendía la obligación al síndico del banco, quien se negó a pagarla. También recibió el banco otras obligaciones para gestionar su cobro, pertenecientes a otras personas. Cuando el síndico tomó posesión de los fondos del banco sólo había en metálico la cantidad de $2,185.37. Las propiedades del banco, incluyendo dinero, pagarés y otros efectos, ascendían en el momento de cerrar sus puertas a $25,000. Las responsabilidades contraídas a $45,000. La corte declaró en este caso que conforme a una regla invariable, dinero depositado por un cliente general del banco, o cobrado para él en un

pagaré con el entendido de que el mismo pasará a su cuenta, sujeto a su cheque, pertenece totalmente al banco, creándose la relación de deudor y acreedor. Cita aquí la corte una distinción hecha por Mr. Thompson, con la cual estamos completamente de acuerdo; y es que cuando el que remite la obligación para ser cobrada no tiene una cuenta general en el banco, no puede razonablemente asumirse que el depósito es general. Naturalmente, cuando el banco asume la responsabilidad de cobrar una obligación, lo hace con un propósito específico, y tiene el deber de devolver ese dinero a la persona dueña de la obligación, una vez cobrado. Sin embargo, si esta persona tiene una cuenta corriente en el banco y pide que se cobre la obligación en el entendido de que el dinero vaya al fondo general, indudablemente que entonces se establece la relación de deudor y acreedor y que el depósito es general. Cuando una institución bancaria se encarga de hacer efectiva una obligación a favor de otra persona, se convierte en mandataria de ésta, a menos que la cantidad cobrada pase a la cuenta general de dicha persona. Aunque en nuestro caso se trata de una cuestión muy distinta, ni siquiera puede aducirse a favor del depósito específico el argumento de que Eliseo Diez no tenía cuenta en el banco, por absoluta carencia de prueba sobre este extremo, y en todo caso porque es la parte que alega la preferencia, basada en un depósito específico, la llamada a probarlo, rebatiendo la presunción prevaleciente, mientras no se demuestre lo contrario, de que el depósito es general.

En el caso de *People* v. *California Safe Deposit & Trust Co.*, 137 Pac. 1111, resuelto por la Corte de Apelaciones de California, Tercer Distrito, se expidió un certificado de depósito idéntico al que fué expedido por el Banco Comercial de Puerto Rico. Aquí como allí se constituyó el depósito para ser satisfecho a la orden de la persona a cuyo favor se expidió el certificado. Este caso fué sometido a la Corte Suprema de California en pleno, en moción de reconsideración, y esta reconsideración fué denegada. Según la prueba

aportada en dicho caso, la firma depositante Aitken & Aitken, hizo saber al banco que deseaba que el dinero fuese enviado a Mrs. Emma J. White, en la ciudad de Tacoma. Se sugirió por los empleados del banco un certificado de depósito. Uno de los miembros de dicha firma expidió un cheque contra el banco sobre fondos que en el mismo tenía, y entregó dicho cheque a un empleado del referido banco, recibiendo en cambio, como se le había sugerido, un certificado de depósito pagadero a la orden de Mrs. Emma J. White. La Corte de California no consideró este depósito de carácter especial con derecho a preferencia sobre los demás acreedores. El certificado expedido en este caso dice así:

"Uptown Branch, California Safe Deposit & Trust Company, 1740 Fillmore Street, South of Sutter. San Francisco, California, Oct. 29. 1907. No. 585. Por la presente certificamos que Aitken & Aitken han depositado en el Safe Deposit & Trust Company, de San Francisco, California, la suma de ochocientos cuarenta y siete dólares cincuenta centavos ($847.50). Pagadero a la orden de Mrs. Emma J. White en moneda legal de los Estados Unidos, previa devolución del presente certificado debidamente endosado.—(Firmado) S. H. Patterson, Contador.—G. Chevassus, Subgerente.—No sujeto a cheques.—Certificado de depósito.—Pagadero sin interés.—Pagadero solamente mediante el San Francisco Clearing House."

La Corte de California discute la cuestión planteada en una laboriosa opinión y dice que el apelante cita dos casos que favorecen su contención: el caso de *People* v. *City Bank of Rochester,* supra, y *Stoller* v. *Coates,* 88 Mo. 516. En el caso de Nueva York, la firma Hartwell, Hough & Co. tenía fondos en el City Bank of Rochester. Dicha firma expidió un cheque contra su propia cuenta, que entregó al Banco para que aplicara su importe al pago de un pagaré contra dicha firma que había sido descontado por el banco. Recibió el banco él cheque, lo marcó como pagado en noviembre 3 de 1882, y al mismo tiempo hizo una entrada en sus libros al efecto de que el pagaré había sido pagado en la misma fecha. Idéntica operación se llevó a cabo con otro pagaré que el

banco había descontado y que fué satisfecho por otro cheque de la misma firma. Sin embargo, cuando se realizaron estas operaciones el banco se había desprendido de los pagarés, sin el consentimiento de la firma, la cual los pagó suponiendo que dichos documentos estaban en posesión del banco. Claramente se ve que en este caso el depósito se hizo para un propósito específico, y que el banco retiró una suma de la cuenta de la firma y la dedicó al pago de las obligaciones, reconociéndolo así por escrito. Después de realizadas estas operaciones el banco fué declarado insolvente y el síndico se negó a pagar las obligaciones que ya había anotado como pagadas en sus libros. La corte de Nueva York, resolviendo esta cuestión, se expresó en estos términos:

"Los cheques del peticionario constituían fondos en poder del banco y así fueron considerados por todas las partes. Estos cheques se entregaron al banco con la instrucción específica de aplicarlos al pago de los pagarés. Estas instrucciones fueron aceptadas por el funcionario del banco y los cheques deducidos de aquel fondo. Desde este momento el banco quedó obligado a conservar el dinero y aplicarlo a dicho propósito, y no a ningún otro, o en caso de no hacerlo así, a devolverlo al peticionario. Con respecto a este dinero, el banco era un depositario y no un dueño."

Se sostuvo en este caso que los pagarés debían ser satisfechos de los fondos en poder del síndico. "Aquí", dice la Corte de California, "hubo un convenio claro en virtud del cual el banco debía aplicar el producto de los cheques a un propósito específico. En el presente caso no existe tal convenio."

Veamos ahora los hechos en el caso de *Stoller* v. *Coates,* supra, tales y como los refiere la Corte de California. Un Sr. Earnest, de Colorado, consignó a la demandante, una firma conocida con el nombre de Stoller & Hill, de Kansas City, diez carros cargados de ganado para ser vendidos por su cuenta. Se instruyó a Stoller & Hill que depositaran el producto de la venta en el Exchange Bank de Colorado, a crédito del consignador. El producto bruto ascendió a $3,769.75,

cantidad acreditada en una letra. Stoller & Hill llevaron la letra al Masting Bank con el propósito de cumplir con las instrucciones recibidas. El producto neto debido al consignador montaba a una cantidad algo menor que el importe de la letra. Stoller & Hill depositaron la letra a su propio crédito e inmediatamente expidieron un cheque por el producto neto para ser trasmitido al consignador en Colorado. Al entregar el cheque suplicaron al banco que depositara su importe en el Exchange Bank of Denver, en Colorado, a crédito del Sr. Earnest, el consignador. El Masting Bank convino en hacerlo así. Este banco se declaró insolvente antes de que el dinero fuese pagado, y se sostuvo que se había constituído un depósito especial. La corte dijo:

"Cuando Stoller & Hill expidieron su cheque por $3,757.56 contra el Masting Bank y le entregaron dicho cheque pagadero a dicho banco o endosado a su favor, ellos depositaron un fondo específico en poder del banco. Se informó al Banco suficientemente de que el Sr. Earnest era el dueño (*ultimate owner*) o beneficiario. El banco convino en trasmitir este fondo al Exchange Bank de Denver, que lo recibiría para el uso del Sr. Earnest."

Comentando estos hechos dice la Corte de California:

"No solamente hubo en este caso un depósito de dinero en el momento de expedir el cheque, sino también un convenio del banco de trasmitir el fondo. Ninguno de estos elementos aparece en el presente caso."

Es verdad que la Corte de California pone énfasis en el hecho de que Aitken & Aitken retirara de su cuenta en el banco una suma para adquirir un certificado de depósito expedido a favor de la Sra. White y en que los fondos del banco no fueron aumentados, pero no es menos cierto que la corte termina su opinión con estas palabras:

"Fué quizás innecesario que Aitken acudiera a la viciosa e inútil ceremonia de recibir el importe de su cheque y devolverlo inmediatamente al Banco para darle el carácter de depósito (*trust*) al fondo, y convertir al banco en el agente de Mrs. White para la trasmisión del dinero. Ellos, es decir, Aitken & Aitken, han debido claramente

encomendar al Banco la responsabilidad de remitir el dinero como se hizo en el caso de Missouri, para que constituyera un fondo específico en sus manos.''

Las palabras de la corte demuestran que si la prueba hubiese demostrado que se encomendó al banco la gestión de trasmitir el fondo a la Sra. White, la corte habría declarado el depósito específico, dándole preferencia como tal, sin parar mientes en el hecho de que Aitken & Aitken retirara una suma de su cuenta para adquirir el certificado, y en que no fuesen aumentados los fondos del banco. La distinción es importante. Cuando se deposita dinero en el banco, no para que lo retenga en su poder, sino para trasmitirlo a una tercera persona, el depósito es específico. Al asumir la institución bancaria la responsabilidad de trasmitir el dinero, acepta una encomienda que no puede evadir y actúa como un mandatario encargado de llevar a cabo una gestión específica. En el presente caso el Banco Comercial de Puerto Rico no quedó obligado a nada, como no fuera a realizar la operación ordinaria de pagar, al presentársele el certificado de depósito por la persona a cuyo favor se expidió o por cualquier endosatario.

En los casos de Missouri y California hubo prueba para demostrar la intención de las partes. En el de Missouri, el banco se comprometió a cumplir con las instrucciones que recibiera de trasmitir el fondo al Exchange Bank of Denver. En el de California se ofreció prueba para demostrar que el dinero iba a ser enviado a Mrs. White en Tacoma. La corte, sin embargo, no creyó probado que el banco se comprometiera a trasmitir el dinero y, a pesar de la prueba practicada, declaró que no se había constituído un depósito específico. En el caso nuestro hay completa ausencia de prueba; es decir, no se produjo otra evidencia que el propio certificado de depósito. Con excepción de este certificado, no existe en los autos elemento alguno de prueba que pueda orientarnos con respecto a cuál fué la intención de las partes. Se trata de un depósito corriente que debe seguir el curso acos-

tumbrado de las operaciones ordinarias que se realizan en los bancos. No difiere este documento del modelo que utilizan las instituciones bancarias al expedir un certificado de depósito a solicitud del depositante.

En resumen, sostenemos que un certificado de depósito aisladamente considerado, lleva consigo la presunción de un depósito general. Si se quiere probar un depósito específico, debe rebatirse la presunción general mediante prueba de la intención de las partes. Como dice la Corte de California en el caso citado, algo más que la intención de una parte al depositar es necesario. Debe demostrarse que concurre la intención de ambas partes, ya expresa o tácitamente. Y como dice la Corte Suprema de Wyoming en el caso de *Gray* v. *Elliot,* 53 A.L.R. 554, resuelto en 1927, circunstancias especiales deben existir con el fin de hacer el depósito especial en vez de general, y, puesto que la igualdad es equidad (*equality is equity*), las cortes han sido cuidadosas en limitar el número de circunstancias que crean un depósito especial en vez de general.

Cuando se define un certificado de depósito no se hace distinción alguna por los tribunales de justicia ni por los tratadistas. No se establece por el mero certificado una relación fiduciaria. La regla general es que el certificado de depósito crea una relación de deudor y acreedor entre el depositante y el banco. En nuestro caso no se ha presentado prueba para rebatir esta presunción, si se exceptúa el propio certificado que por sí solo es evidencia de un depósito general. En todos los casos citados en apoyo de la teoría de un depósito específico, sometidos a nuestra consideración, se produjo prueba abundante. Esos casos, estudiados detalladamente, penetrando en el fondo de las cuestiones debatidas y de la prueba practicada, confirman las conclusiones que aquí establecemos, sin tener ante nuestra consideración otra prueba sobre la intención de las partes que el certificado de depósito expedido por el Banco Comercial.

Copiamos para concluir lo que dice la Corte de Apelaciones de California, en el caso anteriormente citado, refiriéndose a la prueba producida en relación con el certificado de depósito:

"Si pudiera razonablemente deducirse del testimonio de Mr. Aitken, a pesar del hecho de que el certificado de depósito rebate fuertemente la idea de una relación fiduciaria (*trust relation*), que su intención fué crear tal relación (*trust*) y que lo que él dijo e hizo fué así entendido por el banco, o debe presumirse que así entendió lo que se dijo e hizo, nosotros creemos que las reglas de la ley nos obligarían a aceptar tal entendido de las partes. Pero nosotros no hemos podido descubrir en nada de lo dicho o hecho por Mr. Aitken en dicha ocasión que él tuviera derecho a asumir que los funcionarios del banco entendieron que las relaciones de Mrs. White con el banco fuesen otras que las creadas por el certificado de depósito. El certificado de depósito no tiene ninguna de las señales de un depósito especial de dinero que el banco no tenga derecho a mezclar con sus fondos o tratarlo como si fuera suyo. En su faz, crea la relación de deudor y acreedor entre el banco y Mrs. White. Aitken & Aitken fueron sus agentes en dicho asunto, consintiendo a su nombre que la transacción tomara esta forma, y nosotros creemos que el certificado es muy significativo, si no concluyente, en el sentido de demostrar cuál fué el entendido entre las partes.

"Mr. Morse dice que tales certificados son solamente reconocimientos por parte del banco de que ha recibido de ciertas personas ciertas sumas de dinero. En su forma estos certificados son substancialmente simples recibos del banco, en forma negociable, por una suma de dinero, y son únicamente evidencia de la deuda, igual que un libro del banco. 1 Morse on Banks 297. Dichos certificados no crean relaciones de *trusts* entre el depositante y el banco, sino simplemente la de deudor y acreedor."

En el tomo 5°., página 607, de su obra "Banks and Banking," dice Mitchie:

"Cuando un certificado de depósito expresa que el depositante ha colocado cierta suma de dinero en el banco, pagadera en moneda corriente al devolverse el certificado propiamente endosado, tal depósito es un depósito general, y si el banco se declara insolvente, el depositante queda relegado a la posición de un acreedor general solamente."

De acuerdo con nuestro derecho civil, el dinero depositado regularmente en un banco, que en la jurisprudencia americana se denomina depósito general, no puede entenderse legal ni jurídicamente como la constitución de un depósito. En el curso corriente de las operaciones comerciales, la persona que ordinariamente deposita dinero en un banco asiente al uso del mismo por parte de dicho banco. Cuando el depositario tiene permiso para servirse o usar de la cosa depositada, el contrato pierde el concepto de depósito y se convierte en préstamo o comodato. El depósito irregular o de cosas fungibles que tiene su origen en el derecho civil es muy parecido, por no decir idéntico, al depósito general de que habla la jurisprudencia americana. En ambos existe el consentimiento del uso y en ambos se trasmite el dominio, convirtiéndose el contrato en préstamo. Afirma García Goyena y admite Manresa que el depósito irregular ha quedado descartado, y conviene recordar que el contrato adquiere el carácter de préstamo cuando se permite expresamente el uso de la cosa, según el Código Civil, o cuando se presta el asentimiento, según el Código de Comercio. Sin embargo, cuando se advierte la intención de constituir un depósito especial, es lógico que prevalezca el criterio de las partes y quede establecida la relación jurídica de depositante y depositario. Cuando las partes consignan el propósito de constituir un depósito, el contrato no cesa de ser tal, aunque en cierto modo se aleje de los principios ordinarios que lo regulan, y hayan entendido que el depositario, en vez de restituir las idénticas monedas recibidas, puede hacerlo de otras de la misma calidad. Esta es la tendencia moderna de la jurisprudencia americana, que no es incompatible, a nuestro juicio, con nuestro derecho civil. Los bancos existentes en Puerto Rico se han organizado y funcionan dentro del sistema bancario de los Estados Unidos. En materia de depósito estas instituciones se rigen por principios generales que más bien tienen el carácter de

universales, ya que no se diferencian esencialmente de los principios adoptados en otros países.

Aplicando juiciosamente estos principios al caso sometido a nuestra consideración, entendemos que no se ha probado que se trata de un depósito clásico dentro del derecho civil o de un depósito específico dentro de la jurisprudencia americana, y *que debe confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Wolf y Aldrey disintieron.*