WALLA CORPORATION, demandante y recurrida, *v.* BANCO
COMERCIAL DE MAYAGÜEZ, demandado y recurrente.

*Número:* R-81-322     *Resuelto:* 27 de abril de 1983

*Carlos Martínez Vélez*, de *Montañez & Alicea*, abogado del recurrente; *Luis E. Colón Ramery*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El 12 de noviembre de 1975, Rodolfo Adán adquirió del Banco Comercial de Mayagüez dos certificados de depósito pagaderos al portador. Uno de $94,119 y el otro por $54,057. Vencían el 17 y 22 de abril de 1976, respectivamente. Adán entregó los certificados al banco como colateral de unos préstamos que éste le otorgó en marzo, abril y agosto de 1976 por la suma total de $241,000. Los certificados vencieron, pero Adán no exigió su pago. Alegadamente, un oficial del banco entregó indebidamente los certificados a Adán. En octubre de 1976, éste los entregó a Walla Corporation en garantía de unos préstamos que le había concedido anteriormente. Los préstamos otorgados por el banco vencieron en septiembre y noviembre de 1976. En mayo de 1977, el banco compensó parte de estos préstamos con los certificados. En septiembre del mismo año publicó tres edictos en que notificó la compensación al público en general. En octubre de 1977 Walla solicitó el pago de los certificados al banco. Éste se negó a pagarlos. Walla instó demanda contra el banco en cobro de dinero y daños.

Ambas partes solicitaron que se dictara sentencia sumaria. El tribunal de instancia la dictó a favor de Walla. Resolvió que, los certificados eran valores negociables bajo nuestra Ley de Instrumentos Negociables, 19 L.P.R.A. sec. 1 *et seq.*, pagaderos al portador y que siendo el tenedor de los mismos Walla, el banco tenía que pagarle a la demandante el importe del principal más intereses.

A solicitud del banco acordamos revisar. ·

■ En primer lugar, debemos resolver si los certificados de depósito aquí envueltos son valores negociables o no. La controversia se limita a si se cumple el segundo requisito exigido por nuestra Ley de Instrumentos Negociables que requiere que el documento contenga "la promesa u orden incondicional de pagar una suma cierta en dinero". Art. 354 del Código de Comercio, 19 L.P.R.A. sec. 2(2).

■ Disponen en lo pertinente los certificados:

*TÉRMINOS Y CONDICIONES*

Este Certificado se emite sujeto a los siguientes términos y condiciones, así como a las reglamentaciones del Secretario de Hacienda de Puerto Rico, los cuales forman parte de este contrato.

.    .    .    .    .    .    .    .

*NEGOCIABILIDAD:* Este Certificado es transferible y puede ser pignorado o cedido sujeto a las condiciones aquí expresadas, pero cualquier cesión o pignoración debe ser notificada al Banco y aceptada por éste. . . .

El banco alega que la promesa de pago no es incondicional, porque la cláusula de "negociabilidad" requiere la notificación y aprobación del banco para su transferencia. Tiene razón.

■ En el caso de autos, precisamente, la cláusula transcrita exige que se le notifique al banco la cesión de los documentos y que éste la apruebe. Esta cláusula destruye la negociabilidad de los certificados, pues la promesa de pago del banco está sujeta a tal notificación y aprobación, por lo

que la misma no es incondicional. Véase, *Citizens Nat. Bank of Orlando* v. *Bornstein*, 374 So. 2d 6, 13 (1979). En efecto, es la ausencia del requisito de consentimiento del deudor un jalón importante en la distinción entre los documentos negociables y los *no* negociables.[1] Walla aduce, y así resolvió el tribunal de instancia, que dicha cláusula de negociabilidad está excluida porque los certificados son pagaderos "al portador" y leen "CERTIFICADO DE DEPOSITO NEGOCIABLE". No es correcta esta posición.

■ Estas expresiones no convierten en negociables los certificados aquí envueltos. Para que sea negociable, un instrumento debe cumplir con todos los requisitos establecidos en la Sec. 2 de la Ley. T. Quinn, *Uniform Commercial Code Commentary and Law Digest*, Boston, Massachusetts, Warren, Gorham & Lamont, Inc., 1978, Sec. 3-104[A] [3]. Es impertinente cómo lo clasifiquen o lo estimen las partes. R. Anderson, *Anderson on the Uniform Commercial Code*, 2da ed., Rochester, New York, The Lawyers Co-operative Publishing Co., 1971, Vol. 2, Sec. 3-104:4, pág. 600. El hecho de que el documento sea pagadero al portador no lo hace negociable si, como en este caso, no se cumplen los otros requisitos de la Sec. 2 de la Ley. *Bank of California* v. *National City Co.*, 244 P. 690; revocado en 251 P. 561 (1926). El hecho de que se exprese en los certificados que son negociables tampoco los convierte en negociables. Véanse, *Moore* v. *Vaughn*, 150 So. 372, 373 (Miss. 1933); *Board of Public Instruction, etc.* v. *Wright*, 77 So. 2d 770, 773 (1955). Es inescapable concluir que los certificados de depósito en el caso de autos no son instrumentos negociables bajo nuestra Ley de Instrumentos Negociables.

■ Por no ser instrumentos negociables los cerificados, su transferencia tiene el efecto de una cesión y el librador del documento —el banco en este caso— puede oponerle

---

[1] También el Art. 265 del Código de Comercio, 10 L.P.R.A. sec. 1741, quedó excluido en este caso por la citada cláusula de aceptación.

al cesionario —Walla— cualquier defensa que tuviere. Por lo tanto, la segunda cuestión a resolver en este caso es si el banco puede oponerle a Walla, que no es tenedor de buena fe en virtud de la no negociabilidad de los certificados, la compensación de las acreencias que tiene contra Adán. O sea, si puede compensar los certificados de depósito con los préstamos que Adán tomó al banco. Resolvemos que sí.

La compensación es una de las causas de extinción de las obligaciones y se usa para simplificar las relaciones jurídicas entre aquellos que están recíprocamente obligados. R. López Vilas, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Revista de Derecho Privado, 1980, T. XVI, Vol. I, pág. 400. Uno de sus efectos es que se extinguen las deudas en la suma concurrente. Véanse, Art. 1156 del Código Civil, 31 L.P.R.A. sec. 3228; (2) López Vilas, *op. cit.*, págs. 489–490.

Existen tres clases de compensación: legal, judicial y voluntaria. López Vilas, *op. cit.*, pág. 411; J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. I, págs. 818–819. En el caso de autos estamos ante la primera. Esta es la que se reglamenta en el Código Civil y se produce cuando se cumple con todos los requisitos establecidos en los Arts. 1149 y 1150 del Código, 31 L.P.R.A. secs. 3221 y 3222. (3) Sentencia núm. 1554 del Tribunal Supremo de España de 26 de marzo de 1968, Aranzadi, XXXV Repertorio de Jurisprudencia

---

(2) Este artículo lee:

"El efecto de la compensación es extinguir una y otra deuda en la cantidad concurrente, aunque no tengan conocimiento de ella los acreedores y deudores."

(3) Dispone el Art. 1149:

"Tendrá lugar la compensación cuando dos personas, por derecho propio, sean recíprocamente acreedoras y deudoras la una de la otra."

El Art. 1150 lee:

"Para que proceda la compensación, es preciso:

"1. Que cada uno de los obligados lo esté principalmente, y sea a la vez acreedor principal del otro.

"2. Que ambas deudas consistan en una cantidad de dinero, o siendo fungibles

1056; López Vilas, *op. cit.*, pág. 486; D. Espín Cánovas, *Manual de Derecho Civil Español*, Madrid, Ed. Revista de Derecho Privado, 1975, Vol. III, págs. 166-167. Además se exige que no exista prohibición legal que impida compensar. J. Castán Tobeñas, *Derecho civil español, común y foral*, 11ma ed., Madrid, Ed. Reus, 1974, T. 3, págs. 377-378. La doctrina española casi unánimemente sostiene que la compensación legal opera ipso jure desde que concurren las deudas y dichos requisitos. Véanse, entre otros, a M. Albaladejo, *Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1975, T. II, Vol. 1, pág. 256; Castán, *op. cit.*, pág. 340; Espín Cánovas, *op. cit.*, pág. 166; López Vilas, *op. cit.*, págs. 486-488; Q. M. Scaevola, *Código civil comentado*, 2da ed. rev., Madrid, Ed. Reus, 1957, T. XIX, pág. 1094; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1976, T. 1, Vol. II, pág. 451; J. L. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1977, T. II, Vol. 1, pág. 130. Pero véase la tesis de González Palomino en López Vilas, *op. cit.*, págs. 488-489. Ni siquiera se exige el conocimiento de los interesados. Art. 1156 del Código Civil, *ante*; Castán, *op. cit.*, págs. 378-379; R. Álvarez Vigaray, *El efecto automático de la compensación*, en Estudios de Derecho Civil en honor del prof. Castán Tobeñas, Pamplona, Eds. Universidad de Navarra, 1969, T. IV, págs. 52-54. Claro, para que se produzca la compensación tiene que ser invocada judicial o extrajudicialmente por una de las partes. López Vilas, *op. cit.*, págs. 491-497; Espín Cánovas, *op. cit.*, pág. 166; Álvarez Vigaray, *op. cit.*, págs. 58-64. Véase, además, la Regla 6.3 de las de Procedimiento Civil. Una vez se hace y se prueba esta declaración, se extiende su eficacia retroactivamente al momento de la concurrencia de las

---

las cosas debidas, sean de la misma especie y también de la misma calidad, si ésta se hubiese designado.

"3. Que las dos deudas estén vencidas.

"4. Que sean líquidas y exigibles.

"5. Que sobre ninguna de ellas haya retención o contienda promovida por terceras personas y notificada oportunamente al deudor."

obligaciones. López Vilas, *op. cit.*, págs. 496–497; Manresa, *op. cit.*, págs. 378–380.

En el caso de autos los certificados vencieron en abril de 1976 y los préstamos en septiembre y noviembre de ese mismo año. En cuanto a los que vencieron en septiembre, operó automáticamente la compensación, pues Adán y el banco eran recíproca y principalmente deudores y acreedores, las deudas consistían de una cantidad de dinero, eran líquidas, exigibles, estaban vencidas y no había retención o contienda sobre ninguna, instada por terceros. Véanse los Arts. 1149, 1150 y 1156 del Código Civil, 31 L.P.R.A. secs. 3221, 3222 y 3228; *Osorio* v. *Sucn. Álvarez*, 47 D.P.R. 398 (1934); sentencia núm. 1062 del Tribunal Supremo de España de 21 de mayo de 1932, Aranzadi, II Repertorio de Jurisprudencia 460; López Vilas, *op. cit.*, págs. 411–412. Se realizó la compensación, pues el banco la invocó extrajudicialmente al compensar los préstamos en mayo de 1977 y al publicar los edictos en septiembre de ese mismo año. Además, la alegó judicialmente como una de las defensas en su contestación a la demanda instada en este caso por Walla.

De igual forma se produjo la compensación ipso jure en cuanto a los préstamos que vencieron en noviembre. La única diferencia de las deudas antes mencionadas es que, a la fecha de vencimiento de estos préstamos, se había efectuado la cesión de los certificados, por lo que no existía reciprocidad de deuda y acreedor entre Adán y el banco. No obstante, el banco podía oponerle a Walla la compensación. Pasemos a explicar.

■ El tercer párrafo del Art. 1152 del Código Civil,[4] 31 L.P.R.A. sec. 3224, permite que si la cesión de un crédito se efectuó sin que el deudor lo conociera, éste pueda

---

[4] Dispone:

"Si la cesión se realiza sin conocimiento del deudor, podrá éste oponer la compensación de los créditos anteriores a ella y de los posteriores hasta que hubiese tenido conocimiento de la cesión."

reclamar al cesionario la compensación de los créditos que tenga contra el cedente y que sean anteriores a la cesión y los posteriores hasta el momento en que supo de la misma. López Vilas, *op. cit.*, págs. 451–452. Esta compensación es excepcional y se fundamenta, no en la antes mencionada reciprocidad, sino en que cuando no se exige el consentimiento del deudor para la cesión, ésta no puede perjudicarlo por desconocerla. Albaladejo, *op. cit.*, pág. 258.

En este caso, el banco no conoció de la cesión hasta octubre de 1977, o sea, casi un año después de vencidos los préstamos. Por lo tanto, el banco podía compensar los certificados de depósito con los préstamos que tenía Adán con él.

Aunque las partes no lo alegaron, procede considerar si existe prohibición legal que impida la compensación en este caso. La única que podría aplicar es la dispuesta en el primer párrafo del Art. 1154 del Código Civil, [5] 31 L.P.R.A. sec. 3226, que prohíbe la compensación cuando una de las deudas surge de un depósito o de las obligaciones que tiene el depositario. Aunque los documentos aquí envueltos se denominan "certificados de depósito", esta prohibición no aplica, pues la relación entre Adán y el banco es de acreedor y deudor y no de depositario y depositante, y el contrato entre ambos es de préstamo y no de depósito. Véanse: *Tesorero de P.R.* v. *Banco, etc., y Manrique, Int.*, 46 D.P.R. 308 (1934); *Portilla* v. *Banco Popular*, 75 D.P.R. 100 (1953).

*Se dictará sentencia que revoque la dictada por el Tribunal Superior.*

---

[5] Dispone:

"La compensación no procederá cuando alguna de las deudas proviniere de depósito o de las obligaciones del depositario o comodatario."