Librado Torres Torres e Ivelis Torres Soto, recurridos, *v.* Elsira Torres Serrano, Juan Carlos Torres Sánchez, Eric Michael Torres González, Jazmín Torres Ruiz, Divina Torres Rivera y Banco Santander Puerto Rico, peticionarios.

*Número:* CC-2006-0794      *Resuelto:* 6 de julio de 2010

484

*José G. Barea Fernández* y *Víctor J. Girona González*, abogados del Banco Santander Puerto Rico, parte peticionaria; *Efraín López Santiago*, abogado de Elsira Torres Serrano, Juan Carlos Torres Sánchez, Eric Michael Torres González, Jasmín Torres Ruiz y Divina Torres Rivera, parte recurrida; *Nilsa I. Cintrón Santiago*, abogada de Librado Torres Torres e Ivelis Torres Soto, parte recurrida.

EL JUEZ ASOCIADO SEÑOR KOLTHOFF CARABALLO emitió la opinión del Tribunal.

En el presente caso nos corresponde resolver si un banco que expide un certificado de depósito, pagadero de forma alternativa a dos personas, tiene la obligación de notificar al depositante sobreviviente antes de entregar el valor de ese certificado a los herederos del depositante fallecido.

# I

El 8 de febrero de 1996, el Sr. Juan Torres Torres (Juan) y su hermano, el Sr. Librado Torres Torres (Librado), adquirieron un certificado de depósito a plazo fijo por la cantidad de $85,000 en el entonces Banco Central Hispano, el cual luego pasó a ser parte del Banco Santander Puerto Rico (Banco o peticionario). El certificado, Núm. 05-14-0632, se expidió a nombre de "Juan Torres Torres y/o Librado Torres Torres", por lo que constituyó a ambos como depositantes alternos.(1)

Así las cosas, el 10 de septiembre de 1999, Juan falleció y dejó como herederos a los demandados en el pleito Elsira Torres Serrano, Juan Carlos Torres Sánchez, Eric Michael Torres González, Jazmín Torres Ruiz, Divina Torres Rivera y la demandante recurrida Ivelis Torres Soto. La Sra. Elsira Torres Serrano, viuda del causante, fue la encargada de los trámites de declaratoria de herederos, la planilla de caudal relicto y la instancia registral de los bienes del causante. Una vez concluyeron esos trámites, se procedió con la partición de los bienes de la herencia, entre los cuales se incluyó el certificado de depósito que ascendía a $91,743.95 para ese momento. Luego de recibir los documentos pertinentes, el Banco les entregó a los herederos la referida cantidad mediante cheque emitido el 10 de febrero de 2001.

Por su parte, Librado no fue notificado en ningún momento por el Banco de que el valor del certificado de depó-

---

(1) Es preciso señalar que en los escritos de las partes, así como en las sentencias recurridas, se utiliza el término "beneficiario" para referirse a la persona que adquiere un certificado de depósito. No obstante, entendemos que la utilización de ese término resulta un tanto confusa. Por consiguiente, al hacer referencia a la persona que adquiere un certificado de depósito utilizamos el término "depositante", similar al término "depositor" que generalmente se utiliza en los certificados en inglés. Ahora bien, como veremos más adelante, el certificado de depósito es un contrato de préstamo y no de depósito, según las definiciones del Código Civil. Sin embargo, somos del criterio que el uso del término "depositante" no desvirtúa la naturaleza del contrato, particularmente ante los términos expuestos en el propio certificado.

sito, del cual éste también era depositante, le iba a ser entregado a los herederos del depositante fallecido. Así pues, por entender que el Banco tenía la obligación de notificarle la transacción, Librado presentó una demanda sobre cobro de dinero y daños contra todos los herederos de Juan (excepto la Sra. Ivelis Torres Soto quien compareció como demandante) y contra el Banco. Éste alegó que había aportado $20,000 al certificado de depósito, por lo tanto, los herederos del depositante fallecido debían pagarle esa cantidad, más los intereses. Además, alegó que el Banco actuó negligentemente al entregar la cuantía total del certificado de depósito, más intereses devengados, a los herederos de Juan sin notificarle antes, ya que opinaba que por éste ser un depositante tenía que haber sido notificado.

Los codemandados contestaron oportunamente la demanda y presentaron sendas reconvenciones en las cuales alegaron, entre otras cosas, que la parte demandante residía en Puerto Rico al momento de la partición, que tuvo conocimiento pleno de que el certificado de depósito se liquidó en su totalidad en la partición de la herencia de Juan y que no fue hasta cinco años después de la partición que el demandante presentó su reclamación. Además, éstos presentaron demandas contra coparte, alegando que si hubo negligencia al incluir la totalidad del importe del certificado de depósito en la partición de la herencia se debió a las alegadas actuaciones negligentes del Banco.

Posteriormente, el peticionario presentó una moción en la que solicitó la desestimación de la reclamación en su contra. Planteó que las alegaciones hechas en la demanda presentada por la parte recurrida y en las demandas contra coparte presentadas por los codemandados no exponían una reclamación que justificase la concesión de un remedio. Éste entendió que, dado que el certificado de depósito era pagadero de forma alternativa, no había incurrido en negligencia al pagarles el valor a los herederos de

uno de los depositantes, quienes se habían colocado en el lugar de su causante.

Luego de varios trámites, el Tribunal de Primera Instancia emitió su resolución en la que declaró "no ha lugar" la solicitud de desestimación del peticionario y le impuso el pago de costas. Este último acudió ante el Tribunal de Apelaciones mediante un recurso de *certiorari* y solicitó la revocación del dictamen del Foro de Primera Instancia. Mediante la sentencia aquí recurrida, el foro intermedio confirmó la referida resolución, aunque la modificó para eliminar la imposición de costas.

Inconforme, el peticionario acude ante este Tribunal y señala que el Tribunal de Apelaciones erró "al determinar que el [peticionario] tenía la obligación de notificar al cobeneficiario en la alternativa, y demandante en el presente caso, sobre la reclamación de los herederos del otro cobeneficiario". Petición de *certiorari*, pág. 10.

## II

■ La Ley de Transacciones Comerciales, Ley Núm. 208 de 17 de agosto de 1995, según enmendada, define el "certificado de depósito" como un instrumento que contiene un reconocimiento por un banco de que ha recibido una determinada suma de dinero, y éste a su vez constituye un pagaré emitido por el banco.([2]) Es decir, es un documento que se utiliza para manifestar que una persona ha entregado cierta cantidad de dinero a un banco, y que éste último tiene el deber y la obligación de devolver esa cantidad en el término pactado a tal persona o a su tenedor, según sea el caso.([3]) Además, la persona que utiliza este tipo de

---

([2]) Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 L.P.R.A. sec. 401 *et seq.* Sec. 2-104 (19 L.P.R.A. sec. 504). El certificado de depósito es considerado como un tipo de pagaré, ya que el banco se obliga a pagar cierta cantidad de dinero a la persona que lo deposita. Véase L.M. Negrón Portillo, *Derecho cambiario de Puerto Rico: instrumentos negociables*, San Juan, [s. Ed.], 1995, pág. 11.

([3]) Negrón Portillo, *op. cit.*

instrumento habitualmente recibe el pago de intereses por parte del banco a cambio de su depósito.

Ahora bien, aunque la Ley de Transacciones Comerciales define el certificado de depósito, ésta no contiene disposiciones específicas que lo regulen. El Capítulo 2 de esta ley regula específicamente a aquellos instrumentos que son negociables, por lo tanto, para conocer su aplicabilidad a un certificado de depósito es necesario determinar inicialmente si éste es negociable o no.(⁴)

■ La Sec. 2-104 de la Ley de Transacciones Comerciales establece los requisitos que debe reunir un documento de crédito para que sea catalogado como un instrumento negociable. Conforme a lo expuesto en dicha sección, en *Santos de García v. Banco Popular*, 172 D.P.R. 759, 769 (2007), señalamos que "será negociable un instrumento escrito, firmado, que contenga una promesa u orden incondicional de pagar una suma específica de dinero, pagadero a la presentación o a la orden de una persona identificada, pagadero a la presentación o en fecha específica y que no contenga ninguna otra promesa". (Citas omitidas.) Si un documento no incluye expresamente estos requisitos no puede ser un instrumento negociable.(⁵)

■ Al mismo tiempo, la referida ley expresa que "toda promesa u orden, que no sea un cheque, no es un instrumento negociable si, al momento de su emisión o cuando primero adviene a la posesión de un tenedor, la misma contiene una declaración conspicua, expresada de cualquier forma, a los efectos de que la orden o promesa no es negociable".(⁶) En atención a esto, se ha reconocido que

---

(⁴) Sec. 2-102(a) de la Ley Núm. 208, *supra*, 19 L.P.R.A. sec. 502(a).

(⁵) *Santos de García v. Banco Popular*, 172 D.P.R. 759, 769 (2007); *Walla Corp. v. Banco Com. de Mayagüez*, 114 D.P.R. 216 (1983).

(⁶) Sec. 2-104(d), 19 L.P.R.A. sec. 504(d). En la Sec. 1-201(10) se define el término *conspicuo* de la forma siguiente: "Un término de una cláusula es conspicuo cuando está redactado de tal forma que una persona razonable, que será afectada por el mismo, deberá notarlo. Un encabezamiento escrito en letras mayúsculas (e.g. CARTA DE PORTE NO NEGOCIABLE) es conspicuo. Un lenguaje en el texto de un

490

un banco pudiera destruir la negociabilidad de un documento, que no sea un cheque, si le añade en forma conspicua, por ejemplo, las palabras "No Negociable", lo cual se ha entendido que es de por sí suficiente para impedir que un instrumento sea negociable.(⁷)

En la situación particular de los certificados de depósito no es frecuente encontrar que éstos sean instrumentos negociables, ya que estos certificados suelen contener cláusulas y condiciones que destruyen su negociabilidad.(⁸) Por consiguiente, si un certificado de depósito no cumple con los requisitos para ser un instrumento negociable, entonces las disposiciones de la Ley de Transacciones Comerciales que regulan este tipo de instrumentos no les aplican.(⁹)

En el caso de autos, Juan y Librado adquirieron un certificado de depósito por la cantidad de $85,000 en el entonces Banco Central Hispano de Bayamón (actualmente sucursal del Banco Santander). Ese documento se tituló en letras mayúsculas, "CERTIFICADO DE DEPÓSITO —A PLAZO FIJO— NO NEGOCIABLE". Al mismo tiempo, se dispuso justo antes de las firmas la expresión siguiente: "ESTE CERTIFICADO NO ES NEGOCIABLE Y ESTÁ SUJETO A LOS TÉRMINOS Y CONDICIONES QUE APARECEN AL DORSO DE ESTE INSTRUMENTO." A su vez, en el inciso (5) de los términos y las condiciones se indicó palma-

---

formulario es 'conspicuo' si está escrito en letras más grandes o en otro tipo de letra o color. ... La determinación de si un término o cláusula es 'conspicuo' o no, corresponderá a los tribunales." 19 L.P.R.A. sec. 451(10).

(⁷) M.R. Garay Aubán, *Derecho cambiario de Estados Unidos y Puerto Rico: Codigo Uniforme de Comercio de EE.UU., Ley de Transacciones Comerciales de Puerto Rico*, Ponce, Ed. Rev. Der. Pur., 1999, pág. 99.

(⁸) Íd.; *Santos de García v. Banco Popular*, supra. Véase, además, *Walla Corp. v. Banco Com. de Mayagüez*, supra.

(⁹) Ahora bien, aunque en el caso *Santos de García v. Banco Popular*, supra, señalamos que las disposiciones de la Ley de Transacciones Comerciales sólo aplican a los instrumentos negociables, debemos aclarar que las disposiciones del estatuto que aplican únicamente a éstos son aquellas contenidas en el "Capítulo 2 —Instrumentos Negociables". No obstante, esa ley contiene otros capítulos —que si bien no aplican a la controversia de autos— sí podrían aplicarse a los instrumentos que no son negociables.

riamente que el certificado no era negociable y se condicionó su cesión a una previa autorización del Banco.

Por ende, la declaración conspicua en la faz del documento es evidencia concluyente que destruye la negociabilidad del instrumento. Además, las condiciones impuestas en los términos y las condiciones pactados en el certificado destruyen de igual forma su negociabilidad, según la normativa establecida en *Walla Corp. v. Banco Com. de Mayagüez*, 114 D.P.R. 216 (1983). Por consiguiente, como el certificado de depósito no es negociable, las disposiciones de la Ley de Transacciones Comerciales que regulan este tipo de instrumento no les aplican.

## III

A. En varias ocasiones este Tribunal ha sostenido que la relación que se crea entre un banco y un depositante, al constituirse un certificado de depósito, es una relación de acreedor y deudor, y no de depositario y depositante, por lo que el contrato entre ambos es de préstamo y no de depósito.[10] Esto se debe a que "[e]n el curso corriente de las operaciones comerciales, la persona que ordinariamente deposita dinero en un banco asiente al uso del mismo por parte del banco".[11] Una vez el depositario obtiene la autorización para servirse o usar la cosa depositada, el contrato pierde el concepto de depósito y pasa a ser un contrato de préstamo o comodato.[12] Así, cuando el depositante entrega al banco un bien fungible, éste adquiere

---

[10] *Santos de García v. Banco Popular*, supra, pág. 774; *BBVA v. S.L.G. López, Sasso*, 168 D.P.R. 700, 710–711 (2006); *Walla Corp. v. Banco Com. de Mayagüez*, supra, pág. 223; *Portilla v. Banco Popular*, 75 D.P.R. 100 (1953); *Tesorero de P.R. v. Banco etc., y Manrique, Int.*, 46 D.P.R. 308 (1934). Además, cabe señalar que esta norma es análoga a la prevaleciente en Estados Unidos. Véase: B. Clark y B. Clark, *The Law of Banks Deposits, Collections and Credit Cards*, Massachusetts, Ed. Warren, Gorham & Lamont, 1995, Cap. 21.01, pág. 21–1.

[11] *Tesorero de P.R. v. Banco etc., y Manrique, Int.*, supra, pág. 331.

[12] Íd.

su propiedad y está obligado a restituir al acreedor otro tanto de la misma especie y calidad.([13])

Por otra parte, como la relación entre el banco y el depositante es de acreedor-deudor, reconocimos que ésta ha de regirse por el Código Civil.([14]) Por tal razón, en instancias en las cuales no haya una ley especial que aplique —como la Ley de Transacciones Comerciales— aplicará lo relacionado al contrato especial de préstamo y supletoriamente las disposiciones generales de las obligaciones y los contratos del Código Civil.

■ El Código Civil define el contrato de simple préstamo o mutuo como aquel en el cual una de las partes entrega a la otra dinero u otra cosa fungible, con la condición de devolver otro tanto de la misma especie y calidad.([15]) Este tipo de contrato es: *unilateral*, por cuanto sólo produce obligaciones para una de las partes, que es el prestatario; *traslativo de dominio*, en el sentido de que con la entrega de la posesión se entrega también su título, ya que el prestatario recibe la cosa para gastarla, estando éste obligado a devolver el género y, *gratuito* u *oneroso*, según se hayan pactado el pago de intereses o no.([16])

■ Toda vez que el contrato de préstamo es unilateral, por generar obligaciones a cargo del prestatario, éste estará obligado a entregar lo prestado —con sus intereses si se pactaron— una vez el término haya vencido. Cuando lo prestado es dinero, el Art. 1645 del Código Civil([17]) dispone que la obligación del prestatario estará sujeta a la

---

([13]) Art. 1644 del Código Civil, 31 L.P.R.A. sec. 4571. Véase, además, *BBVA v. S.L.G. López, Sasso*, supra, pág. 711.

([14]) *Santos de García v. Banco Popular*, supra, pág. 774; *BBVA v. S.L.G. López, Sasso*, supra, pág. 711; *Walla Corp. v. Banco Com. de Mayagüez*, supra.

([15]) Arts. 1631 y 1644 del Código Civil, 31 L.P.R.A. secs. 4511 y 4571.

([16]) J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Rev. Jurídica U.I.A., 1990, T. IV, Vol. II, págs. 452–453; J. Castán Tobeñas, *Derecho Civil español, común y foral*, 15ta ed., Madrid, Ed. Reus, 1993, T. 4, pág. 452.

([17]) 31 L.P.R.A. sec. 4572.

disposición del Art. 1124 del Código Civil.(¹⁸) Este último señala que "[e]l pago de las deudas de dinero deberá hacerse en la especie pactada, y no siendo posible entregar la especie, en la moneda de plata u oro que tenga curso legal en Puerto Rico". En otras palabras, si la especie pactada fuese extranjera, la obligación principal es cumplir con esa especie, de no ser posible, entonces habrá de cumplirse entregando su equivalente en la moneda de Estados Unidos de América, que es la de curso legal en Puerto Rico.

■   A. Reiteradamente hemos reconocido que en nuestro ordenamiento jurídico rige el principio de la autonomía contractual entre las partes. Esto implica que las partes pueden establecer los pactos, las cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y el orden público.(¹⁹) Asimismo, el Art. 1044 del Código Civil establece el principio general de que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse según éstos.(²⁰) Por tal razón, las partes contratantes se obligan a lo pactado en el contrato.

■   Ahora bien, hay instancias en las cuales pueden surgir controversias en torno a las palabras o disposiciones que han sido utilizadas en un contrato. Ante esto, el Código Civil ha establecido una serie de normas que regulan el proceso de hermenéutica contractual. Así, como regla general cuando los términos de un contrato o una cláusula contractual son suficientemente claros y no dejan dudas sobre la intención de los contratantes, hay que atenerse al sentido literal de las palabras.(²¹) En consecuencia, cuando los términos son claros los tribunales no pueden entrar a sol-

---

(¹⁸) 31 L.P.R.A. sec. 3174.

(¹⁹) Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372.

(²⁰) 31 L.P.R.A. sec. 2994.

(²¹) Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471.

ventar lo que alegadamente las partes intentaron pactar al momento de contratar.[22]

Por el contrario, cuando los términos o las palabras no son claros o dejan dudas sobre la intención común de los otorgantes, el juzgador debe examinar todas las circunstancias concurrentes al otorgamiento del contrato, atendiendo principalmente los actos de éstos, coetáneos y posteriores al contrato.[23] Además, cuando las palabras puedan tener distintas acepciones, éstas serán entendidas según la naturaleza y el objeto del contrato.

C. En la controversia que nos ocupa, el certificado de depósito que se constituyó era pagadero a Librado Torres Torres y/o Juan Torres Torres. La conjunción copulativa "y" se utiliza normalmente "para unir palabras o cláusulas en concepto afirmativo".[24] Su uso implica la unión de todas las palabras que ella vincula.[25] En cambio, el uso de la conjunción disyuntiva "o" indica "diferencia, separación o alternativa entre dos o más personas, cosas o ideas".[26] Por tal razón, nos corresponde delimitar cuál es el efecto que tiene la utilización de ambas conjunciones en un documento de crédito.

En *Barreras v. Santana*, 87 D.P.R. 227 (1963), tuvimos la oportunidad de interpretar la utilización combinada de la conjunción copulativa "y" y la conjunción disyuntiva "o", específicamente en un contrato de seguro. En esa ocasión se había expedido una póliza a la Asociación Hípica de Puerto Rico y/o sus miembros individuales. Ante ello, señalamos que como cuestión de hecho, el efecto de utilizar la combinación de conjunciones era crear tres pólizas, que-

---

[22] *C.F.S.E. v. Unión de Médicos*, 170 D.P.R. 443, 450 (2007).

[23] Art. 1234 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3472; *C.F.S.E. v. Unión de Médicos*, supra, págs. 450–451.

[24] Real Academia Española, *Diccionario de la Lengua Española*, 22da ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 2326.

[25] Véase *López Santos v. Tribunal Superior*, 99 D.P.R. 325, 330 (1970).

[26] Real Academia Española, *op. cit.*, pág. 1601.

dando asegurados: (1) la Asociación como tal, (2) la Asociación y sus miembros, y (3) los miembros de la Asociación. Por consiguiente, la utilización de la combinación "y/o" en un documento de crédito tiene el efecto principal de permitir la posibilidad de elegir entre la suma o la alternativa de dos opciones.[27]

Conforme a lo anterior, el certificado de depósito en cuestión, al ser pagadero a Librado y/o Juan, constituyó un documento de crédito pagadero en alternativa. Así, el Banco podía pagar en una de tres formas, a saber, (1) a Juan como tal, (2) a Librado como tal y (3) a ambos en conjunto. No hay duda de que la intención de los depositantes fue permitirle al Banco pagar a cualquiera de ellos en su carácter personal o en conjunto. Además, es importante señalar que lo anterior no está en controversia. Ambas partes aceptan que el certificado de depósito podía pagarse a cualquiera de los depositantes. Asimismo, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones reconocieron la constitución alternativa del certificado de depósito.

Específicamente, el Tribunal de Apelaciones utilizó como fundamento la Sec. 2-110(d) de la Ley de Transacciones Comerciales, la cual señala que, "si un instrumento es pagadero en forma alternativa a dos (2) o más personas, el mismo es pagadero a cualquiera de éstas y puede negociarse, cancelarse o exigirse su cumplimiento por cualquiera o todos ellos que estén en posesión del instrumento".[28] Sin embargo, como ya hemos resuelto, el Capítulo 2 de esta ley es inaplicable al certificado de depósito que nos ocupa, por lo que esa sección es inaplicable. No obstante, debemos señalar que con el Derecho expuesto el

---

[27] Cabe señalar que el *Diccionario Panhispánico de Dudas* reconoce que el uso conjunto de las conjunciones copulativa y disyuntiva separadas por una barra oblicua es un calco del inglés *and/or*, y tiene la intención de hacer explícita la posibilidad de elegir entre la suma o la alternativa de dos opciones. Real Academia Española, *Diccionario Panhispánico de Dudas*, Madrid, Ed. Aguilar, 2005, pág. 681.

[28] 19 L.P.R.A. sec. 510(d).

resultado es el mismo. Esto es, que cuando un documento de crédito es pagadero en la alternativa, paga bien quien lo hace sólo a uno de ellos.[29]

Ahora bien, al morir Juan, y luego de los procedimientos pertinentes, entre los cuales se hizo una oportuna solicitud de pago, el Banco pagó a los herederos de éste la suma total del certificado de depósito. ¿Podía el Banco pagar esa suma a los herederos de Juan? Entendemos que sí.

## IV

A. El Art. 610 del Código Civil de Puerto Rico[30] establece que por el sólo hecho de la muerte, los herederos suceden al difunto en todos sus derechos y obligaciones. De esta forma, la herencia de una persona comprende todos los bienes y las obligaciones que no se hayan extinguido por su muerte.[31] Así pues, hemos reconocido que nuestro derecho sucesorio alcanza las relaciones jurídicas —tanto activas como pasivas— que constituían el patrimonio de la persona a la fecha de su muerte.[32] No obstante, el catedrático Efraín González Tejera nos comenta que "el Código Civil no contiene una regla uniforme sobre los bienes, los derechos y las obligaciones que se transmiten por herencia y sobre los que, por ser personalísimos, concluyen con la vida del titular".[33] Sin embargo, la norma prevaleciente sostiene la transmisibilidad "de la inmensa mayoría de los elementos integrantes del patrimonio de una persona fallecida".[34]

---

[29] Ello es así siempre que del instrumento no surja otra cosa, por lo que el banco no tiene la obligación de notificarle al otro depositante, a menos que así se disponga en los términos y las condiciones del certificado.

[30] 31 L.P.R.A. sec. 2092.

[31] Art. 608 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2090.

[32] *Sucn. Álvarez v. Srio. de Justicia*, 150 D.P.R. 252, 266 (2000).

[33] E. González Tejera, *Derecho de Sucesiones*, San Juan, Ed. U.P.R., 2001, T. 1, pág. 326.

[34] Íd. Véase *Feliciano Suárez, Ex parte*, 117 D.P.R. 402, 413 (1986).

■    Por consiguiente, la regla general en nuestra jurisdicción es que la posición jurídica del causante se mantendrá en lo posible inalterable, con la colocación del heredero en su lugar.([35]) Desde inicios del siglo pasado reconocimos que la sustitución del causante por su heredero constituye una continuación de su personalidad.([36]) De esta forma, normalmente los derechos patrimoniales son transmisibles por herencia, salvo aquellos que por sus características, disposición de ley o pacto sean intransmisibles.([37]) Además, un heredero ha de estar legitimado para suceder al causante en aquellos derechos que éste pudo haber ejercitado en vida, aún cuando no los hubiera ejercitado por las razones que fuera.([38])

■    Cónsono con estos principios, el Art. 1209 del Código Civil señala que "[l]os contratos sólo producen efecto entre las partes que los otorgan y sus herederos; salvo en cuanto a éstos, el caso en que los derechos y obligaciones que proceden del contrato no sean transmisibles, o por su naturaleza, o por pacto, o por disposición de ley". En consecuencia, generalmente los derechos y las obligaciones contractuales asumidas por una persona no se extinguen con su muerte; más bien, éstas encuentran continuidad en la sucesión.

B.    En este caso, el certificado de depósito fue pactado

---

([35]) *Feliciano Suárez, Ex parte,* supra; *Robles Menéndez v. Tribunal Superior,* 85 D.P.R. 665, 672 (1962); *Arroyo v. Fernández,* 68 D.P.R. 514, 517 (1948).

([36]) *Sucesión Dávila v. El Registrador de la Propiedad,* 15 D.P.R. 669, 673 (1909).

([37]) Véanse: Arts. 549, 1065 y 1209 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 1931, 3029 y 3374. Además, en *Sucn. Álvarez v. Srio. de Justicia,* supra, pág. 268, reconocimos que no son transmisibles por herencia: "las relaciones jurídicas de carácter público, las personalísimas y las de contenido patrimonial de duración vitalicia; los derechos reales de carácter vitalicio; algunos derechos de crédito; los derechos y deberes que integran las relaciones familiares, excepto los de contenido exclusivamente patrimonial y transmisible; los derechos que emergen de un contrato de arrendamiento; los derechos obtenidos como beneficiario en virtud de la legislación de accidentes del trabajo; el derecho al nombre; las cantidades que el asegurador deba entregar al asegurado, en cumplimiento del contrato." (Escolio omitido.)

([38]) *Sucn. Álvarez v. Srio. de Justicia,* supra, págs. 268–269.

por un término de seis meses, específicamente del 8 de febrero de 1996 al 8 de agosto del mismo año. Ello tenía el efecto de que a partir de la conclusión de ese término el certificado podía ser cobrado por cualquiera de los depositantes. Sin embargo, de los términos y las condiciones de ese instrumento surge que el Banco podía, a su opción, extender la fecha de vencimiento si el certificado no era presentado para su pago en o antes del décimo día a partir de la fecha de vencimiento. Estos periodos serían de igual extensión al pactado, es decir, de seis meses. Por consiguiente, una vez vence el término de un certificado de depósito y no se cobra, éste usualmente se renueva por un término similar al pactado hasta que finalmente sea cobrado. En consecuencia, al vencer el término, el derecho a cobrarlo adviene a la vida y pasa a formar parte de los derechos patrimoniales de la persona a quién esté constituido.

Como ya hemos expresado, el certificado en cuestión fue expedido a la orden de Juan Torres Torres y/o Librado Torres Torres, por lo que ambos eran depositantes en la alternativa. Por varios años ninguno de los dos intentó cobrar el certificado, por ende, una vez Juan fallece, su sucesión acude al Banco para cobrarlo. Así, luego de que éstos le acreditaran su condición de herederos a través de los documentos de rigor, el Banco procedió a pagarles el monto total al que ascendía el certificado de depósito. De hecho, en este caso no se cuestiona la actuación del Banco de pagarle a la referida sucesión el valor del certificado de depósito, sino el hecho de que el Banco no le notificó al recurrido Librado, como depositante del instrumento, que se disponía a entregar la suma total a la que éste ascendía a los herederos del otro depositante. ¿Existía un deber del Banco de notificar al otro depositante? Entendemos que no.

El recurrido señala que Juan dejó de existir como persona cuando falleció, por ende, éste, al ser el único depositante vivo, le correspondía cobrar el monto total del certi-

ficado de depósito. Sin embargo, es evidente que el planteamiento antecedido obvia la doctrina sucesoria de nuestra jurisdicción, la cual sostiene en términos generales que los derechos y las obligaciones de un causante continúan en su sucesión.

Por su parte, el Tribunal de Primera Instancia entendió que la sucesión de Juan no tenía el derecho a cobrar el certificado de depósito y utilizó como analogía los casos en los que se hace designación de beneficiarios en una póliza de seguro. En esos escenarios, cuando un beneficiario muere antes de la persona que lo designó en tal capacidad, los herederos no tienen el derecho a reclamar la póliza de seguro del beneficiario. De esta forma el foro de instancia entendió que fallecido uno de los dos depositantes en la alternativa, la prioridad la tiene el otro y el Banco estaba obligado a notificar al depositante vivo. No obstante, la doctrina de las pólizas de seguros es inaplicable a la controversia ante nos. En Puerto Rico, el derecho a recibir el producto de una póliza de seguro de vida reside únicamente en aquellos llamados como beneficiarios.[39] Por disposición de ley, el derecho patrimonial de una póliza de seguro de vida no es transmisible.[40] Así, una vez muere el asegurado, la póliza le corresponde a los beneficiarios y no a los herederos.

En vista de lo anterior, entendemos que el carácter especial que rige a las pólizas de seguros de vida no puede aplicarse por analogía a los certificados de depósito, los cuales en ausencia de ley especial que los regule, se rigen por el Código Civil y las disposiciones especiales del contrato de préstamo. Además, contrario a la naturaleza personalísima del derecho sobre la titularidad de una póliza de seguro de vida, no encontramos precepto legal alguno aplicable al contrato de préstamo que impida o limite la

---

[39] *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 636 (1994).

[40] Véanse: Art. 11.300 del Código de Seguros, 26 L.P.R.A. sec. 1130; *Fernández Vda. de Alonso v. Cruz Batiz*, 128 D.P.R. 493 (1991).

transmisibilidad del tal derecho patrimonial. Por consiguiente, la sucesión de Juan podía tomar el lugar de éste en el certificado de depósito y cobrarle al Banco el pago correspondiente.

Por otro lado, el recurrido señala que al ser el único depositante vivo el Banco estaba obligado a notificarle de la solicitud de pago realizada por la sucesión. Además, el Tribunal de Apelaciones expresó que ante el hecho de que el recurrido reclamaba haber aportado al certificado una porción monetaria de su propio peculio, de que el Banco conocía que el documento era pagadero en la alternativa y de que existía una sucesión compuesta por varios herederos, era razonable que el banco notificara a Librado de la reclamación de la sucesión de Juan. Específicamente señaló que "[n]o podía optarse por satisfacer la reclamación de la sucesión de Juan sobre los derechos de Librado como beneficiario en la alternativa". Por tal razón, confirmó la actuación del Tribunal de Primera Instancia de denegar la solicitud de desestimación presentada por el Banco.

No obstante, ni el recurrido ni los foros inferiores proporcionaron algún fundamento en derecho que justifique la notificación de un depositante en la alternativa. La postura del foro apelativo intermedio parecería indicar que la razonabilidad de la notificación se sustenta en el hecho de que uno de los depositantes había fallecido. Esto es, que si Juan estuviese vivo y hubiese solicitado el pago del certificado de depósito, Librado no tenía que ser notificado. Por otra parte, claramente en los términos y las condiciones del certificado que nos ocupa nada se dispuso sobre la notificación de alguno de los depositantes en caso de que alguno de ellos lo intentara cobrar por su cuenta o en caso de fallecimiento. Así, al pactar el certificado como un instrumento pagadero en la alternativa, es forzoso concluir que ambos depositantes consintieron y autorizaron al Banco a pagar a cualquiera de ellos. Claramente, ese es el contrato y, por ende, la ley entre las partes. En definitiva, el Banco

podía pagar el monto total del certificado de depósito a la sucesión de Juan sin notificarle esa acción a Librado. Al así hacerlo, no actuó negligentemente sino en conformidad al contrato suscrito.

V

Por último, en el caso de autos el peticionario presentó una moción de desestimación en la que alegó que las demandas no exponían una reclamación que justificase un remedio. El Tribunal de Primera Instancia consideró esa moción y la declaró "no ha lugar".

La Regla 10.2 de Procedimiento Civil[41] permite a un demandado solicitar que se desestime la demanda en su contra cuando esta no exponga "una reclamación que justifique la concesión de un remedio". Ante ello, hemos resuelto que, para resolver una moción de desestimación, los tribunales tienen que dar por ciertas las alegaciones fácticas de la demanda.[42]

Por otra parte, es importante tener en cuenta la disposición de la Regla 6.1 de Procedimiento Civil,[43] que establece que la demanda sólo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativas de que el peticionario tiene derecho a un remedio". Consecuentemente hemos reconocido que en nuestra jurisdicción rige la norma procesal de que las alegaciones tienen el único propósito de notificarle a la parte demandada a grandes rasgos, cuáles son las reclamaciones en su contra y ésta pueda comparecer si así lo desea.[44] Por tal razón, al

---

[41] 32 L.P.R.A. Ap. III.

[42] *Sánchez v. Aut. de los Puertos*, 153 D.P.R. 559, 569 (2001); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 504–505 (1994); *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 D.P.R. 712 (1992).

[43] 32 L.P.R.A. Ap. III.

[44] *Sánchez v. Aut. de los Puertos*, supra, págs. 569–570; *Reyes v. Cantera Ramos, Inc.*, 139 D.P.R. 925, 929 (1996).

atender una moción de desestimación resulta evidente interpretar las alegaciones conjunta y liberalmente a favor del promovido.[45] Así pues, al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal concediéndose "únicamente cuando de los hechos alegados no puede concederse remedio alguno a favor del demandante".[46]

Conforme a lo expuesto y a lo aquí resuelto, no existe remedio alguno a favor de los demandantes contra la parte codemandada y aquí peticionaria, Banco Santander Puerto Rico, por consiguiente, procede que se revoque la sentencia del Tribunal de Apelaciones y se desestimen las demandas en su contra.

## VI

Por los fundamentos expuestos, *revocamos la sentencia del Tribunal de Apelaciones y declaramos "con lugar" la moción de desestimación presentada por la parte codemandada, Banco Santander Puerto Rico. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.*

*Se dictará Sentencia de conformidad.*

La Jueza Asociada Señora Fiol Matta concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez y la Juez Asociada Señora Rodríguez Rodríguez no intervinieron.

---

[45] *Sánchez v. Aut. de los Puertos*, supra, pág. 570.

[46] R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.