Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| HAYDEE SÁNCHEZ ORTIZ<br><br>Demandante Apelante<br><br>v.<br><br>MARGARITA SÁNCHEZ ORTIZ Y OTROS<br><br>Demandados Apelados | KLAN202400829 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Civil Núm.: FA2021CV00852<br><br>Sobre:<br>Remedio Provisional Regla 56.1) Impugnación de Declaratoria de Herederos; Sentencia Declaratoria; Participación de Herencia y División y Adjudicación de Bienes Hereditarios; y Daños y Perjuicios |

Panel especial integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

Comparece la señora Haydee Sánchez Ortiz (señora Sánchez Ortiz o apelante) mediante recurso de apelación y solicita que revoquemos la *Sentencia Parcial* del Tribunal de Primera Instancia, Sala Superior de Fajardo, emitida el 3 de junio de 2022. En dicho dictamen, se desestimó la demanda de la apelante contra el Banco Popular de Puerto Rico (Banco Popular o apelado). Por los fundamentos que expresaremos, confirmamos la *Sentencia Parcial* recurrida.

En síntesis, y en lo pertinente, el caso de epígrafe trata de una demanda de daños y perjuicios, entre otras causas de acciones. Según el expediente, la señora apelante alega que su padre, el señor Pablo

Sánchez Salamán (señor Sánchez Salamán), falleció intestado el 15 de febrero de 2014. Según la propia apelante, el señor Sánchez Salamán compartía en el Banco Popular varias cuentas con sus parientes: (1) las cuentas 100005057456 (011), 314057962 y 714148642 con la señora Emma Iris Ortiz Ventura (señora Ortiz Ventura); (2) la cuenta 100006109727 (003) con la señora Emma Sánchez Pacheco (señora Sánchez Pacheco); y (3) la cuenta 100006109798 (002) con la señora Margarita Sánchez De Pesante (señora Sánchez De Pesante). Específicamente, la apelante alega que tales cuentas son compartidas por las referidas personas de manera "y/o". Además, la apelante alega que las señoras Ortiz Ventura y Sánchez Pacheco son la misma persona.

La apelante también alega que las cuentas 100005057456 (011), 100006109727 (003), 100006109798 (002) y 714148642 fueron vaciadas y cerradas días después del fallecimiento del señor Sánchez Salamán, a pesar de que estas pertenecían a la sucesión. Asimismo, la evidencia presentada demuestra que el 18 de febrero de 2024 las siguientes personas, identificadas como "depositantes", acudieron al Banco Popular: (1) la señora Ortiz Ventura retiró veinte mil setenta y cuatro dólares con diecinueve centavos ($20,074.19) de la cuenta 100005057456; (2) la señora Sánchez Pacheco retiró veintisiete mil setecientos sesenta y tres dólares con veintiocho centavos ($27,763.28) de la cuenta 100006109727; y (3) la señora Sánchez De Pesante retiró veintidós mil doscientos nueve dólares con dos centavos ($22,209.02) de la cuenta 100006109798. Poco después, la señora Ortiz Ventura solicitó el cierre de la cuenta 714148642 por este llegar a un balance de cero ($0.00) dólares.

Pertinente a la controversia ante nos, el Contrato de Cuentas de Depósito para Individuos del Banco Popular (Contrato de Cuentas) explica que, de ocurrir el fallecimiento de uno de los titulares de la cuenta de depósito, el titular sobreviviente notificará inmediatamente al Banco Popular. Al ser notificado, el Banco Popular codificará la cuenta y congelará los fondos existentes en la misma. Igualmente se informa de lo mismo en el Contrato de Certificados de Depósitos (Contrato de Certificados), añadiendo que el Banco Popular podrá, a su discreción, permitir el retiro de los fondos del certificado sin imposición de penalidades por cancelación antes del vencimiento. Más aun, el Contrato de Cuentas dispone que en las cuentas indistintas—es decir, de "y/o"—los titulares tienen el derecho a depositar y retirar fondos y cerrar sus cuentas, mientras que el Contrato de Certificados explica que de los certificados ser en forma indistinta—igualmente "y/o"—los fondos depositados son propiedad de todos los depositantes, cada uno tendrá el derecho individual a cancelar el certificado y se entenderá que cada depositante autoriza al otro a efectuar transacciones y cancelaciones.

En tales circunstancias, la apelante presentó una demanda contra el Banco Popular, la señora Sánchez De Pesante, la señora Sánchez Ortiz, la señora Ortiz Ventura y otras, por daños y perjuicios, entre otras acciones. Particularmente, la apelante demandó al Banco Popular por incumplir con su deber contractual de proteger el dinero depositado en dicha institución por el señor Sánchez Salamán y fallar en actuar ante la denominada "actividad sospechosa". Luego de varios trámites procesales, el Banco Popular solicitó la desestimación de la demanda en su contra por ausencia de una causa de acción que amerite la

concesión de un remedio, particularmente por (1) los certificados de depósito del señor Sánchez Salamán contener fondos que también pertenecían indistintamente a las codemandadas; (2) el Banco Popular no haber recibido notificación del fallecimiento del señor Sánchez Salamán antes de los retiros y las cancelaciones de las cuentas, un hecho a la cual la apelante no se opone; (3) el Banco Popular no tiene la obligación de notificar los retiros hechos por un cotitular de la cuenta.

Luego de la apelante presentar su oposición, el foro primario desestimó la causa de acción contra el Banco Popular por estimar que dicha entidad no incumplió con sus obligaciones contractuales. Posterior al declararse sin lugar la solicitud de reconsideración de la apelante, esta recurrió ante este Tribunal de Apelaciones, quien desestimó el recurso por ser uno prematuro mediante la falta de notificación adecuada de la moción de reconsideración. Ante esto y otros trámites necesarios, el foro primario eventualmente notificó su determinación a la antes referida moción de reconsideración a todas las personas correspondientes.

Insatisfecha, la apelante recurre nuevamente ante este Tribunal y alega que el foro primario erró al (1) desestimar la demanda contra el Banco Popular, ya que este omitió cumplir con sus deberes contractuales y estatutarios ante actividad sospechosa en la cuenta de una persona fallecida, particularmente al amparo del Código de Rentas Internas, 13 LPRA sec. 30011 *et seq.*, *Ley Especial para Prevenir la Explotación Financiera contra los Adultos Mayores y Adultos con Impedimentos*, Ley Núm. 76-2020 (8 LPRA sec. 1571 *et seq.*) y el *Bank Secrecy Act*, 31 USC 5311 *et seq.*, en cuanto al *Suspicious Activity Report*; y (2) al abusar de su discreción y desestimar con perjuicio la

causa de acción. En oposición, el Banco Popular argumenta que el foro primario actuó correctamente por (1) la apelante no tiene derecho a remedio alguno, ya que el Banco Popular cumplió con sus obligaciones contractuales; y (2) no existir actividad sospechosa, ya que las codemandadas eran cotitulares de la cuenta bancaria.

En nuestro ordenamiento, uno de los fundamentos para solicitar la desestimación de una demanda es que esta no expone una reclamación que justifique la concesión de un remedio. Regla 10.2(5) de Procedimiento Civil (32 LPRA Ap. V). Ante tal planteamiento, la desestimación solo procede cuando se demuestra que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pueda probar. *Rivera Candela et al. v. Universal Insurance Company*, 2024 TSPR 99 (citando a *Cobra Acquisitions v. Mun. de Yabucoa et al.*, 210 DPR 384 (2022)). Por ello, se debe considerar los hechos bien alegados de la manera más favorable al demandante, y al resolver toda duda a favor de éste, si la demanda es suficiente para constituir una reclamación válida. Íd. (citando a *Cobra Acquisitions v. Mun. de Yabucoa et al.*, *supra*; *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022)). No obstante, la solicitud de desestimación se dirige únicamente a los méritos de la controversia y no a los aspectos procesales del caso. *Eagle Security Police v. Efrón Dorado et al.*, 211 DPR 70 (citando a *Montañez et al. v. Hosp. Metropolitano et al.*, 157 DPR 96 (2002)).

A esos efectos, el Código Civil de 1930 señala que los contratos tienen fuerza de ley y las partes deben cumplir con lo dispuesto en él.[1]

---

[1] Por razón de la obligación contractual en controversia haberse perfeccionado antes del 2020, se utilizará el Código Civil del 1930 para fundamentar nuestros criterios.

Art. 1044 del Código Civil de 1930, 31 LPRA sec. 2994. Para que un contrato sea válido, se requiere el consentimiento de los contratantes, el objeto cierto materia del contrato, y la causa de la obligación. Íd., ant. sec. 3391. De consentirse, el contrato se perfecciona y desde ese entonces obligará a las partes a cumplir con lo expresadamente pactado y las consecuencias que sean conformes a la buena fe, al uso y a la ley. Íd., ant. sec. 3375. En ese sentido, se interpretará un contrato en su sentido literal si sus términos son claros y no dejan duda sobre la intención de los contratantes. Íd., ant. sec. 3471. Sin embargo, de notarse que las palabras en el contrato contradicen la intención evidente de los contratantes, prevalecerá la intención. Íd. Véase, también, Art. 1235 del Código Civil de 1930, 31 LPRA ant. sec. 3473.

Claro, de una de las partes incumplir con lo estipulado en el contrato, esta incurrirá en dolo, negligencia o morosidad y deberá indemnizar los daños y perjuicios causados. Íd., ant. secs. 3018, 4065. De hecho, la responsabilidad contractual se basa en el quebrantamiento de una obligación que surge de un contrato expreso o implícito. *Rivera Sanfeliz et al. v. Jta. Dir. Firstbank et al.*, 193 DPR 38 (2015) (citando a *Soc. de Gananciales et al. v. Vélez & Asoc.*, 145 DPR 508 (1998)). Al incumplirse con lo estipulado en un contrato, solo una parte contratante podrá ejercitar una acción *ex contratu* contra la otra, es decir, un tercero extraño a la relación jurídica no está legitimado para exigir el resarcimiento de los daños sufridos a raíz del quebrantamiento contractual. Íd. (citando a *Maderas Tratadas et al. v. Sun Alliance et al.*, 185 DPR 880 (2012); *Muñiz-Olivari et al. v. Stiefel Labs.*, 174 DPR 813 (2008)).

Ahora bien, nuestro ordenamiento deja claro que los herederos suceden en todos los derechos y las obligaciones del fallecido causante. Art. 610 del Código Civil de 1930, 31 LPRA ant. sec. 2092. La posición jurídica del causante se mantiene en los posible inalterable y, en efecto, los derechos y las obligaciones contractuales no se extinguen con la muerte, sino continúan en la sucesión. *LSREF2 Island Holdings v. Ashford RJF et al.*, 201 DPR 1026 (2019) (citando a *Torres, Torres v. Torres et al.*, 179 DPR 481 (2010)).

A saber, una relación contractual entre un banco y un depositante es de acreedor y deudor, y una vez el depositario obtenga la autorización para servirse o usar la cosa depositada, el contrato se convierte en uno de préstamo o comodato. *Torres, Torres v. Torres et al.*, *supra* (citando a *Santos de García v. Banco Popular*, 172 DPR 759 (2007); *BBVA v. SLG López, Sasso*, 168 DPR 700 (2006); *Walla Corp. v. Banco Com. de Mayagüez*, 114 DPR 216 (1983); *Portilla v. Banco Popular*, 75 DPR 100 (1953); *Tesorero de PR v. Banco Comercial*, 46 DPR 308 (1934)). Por tanto, mientras exista la relación contractual de acreedor-deudor, tal deberá regirse por el Código Civil o, cuando aplique, una ley especial. Íd. (citando a *Santos de García v. Banco Popular*, *supra*; *BBVA v. SLG López, Sasso*, *supra*; *Walla Corp. v. Banco Com. de Mayagüez*, *supra*). No obstante, cuando involucre una sucesión, el banco no entregará a los herederos, legatarios o beneficiarios del causante los fondos en cuentas a nombre del finado, o de este y otra persona conjuntamente, una cantidad que exceda de quince mil ($15,000) dólares o de veinticinco (25%) por ciento del total de dichos fondos, cualquiera que sea mayor, sin la autorización del

Secretario del Departamento de Desarrollo Económico y Comercio. Sec. 2054.05 del Código de Rentas Internas, 13 LPRA sec. 31165.

Además, sobre los protocolos que deben activarse ante actividad sospechosa bancaria, la *Ley Especial para Prevenir la Explotación Financiera contra los Adultos Mayores y Adultos con Impedimentos* identifica como casos de explotación financiera (1) los retiros o débitos irregulares o atípicos de las cuentas de banco de la persona de edad avanzada; (2) retiros de dinero incompatibles con los medios económicos de la persona de edad avanzada; (3) transacciones no autorizadas por la persona por cualquier medio electrónico; y (4) manejo inadecuado de fondos del adulto mayor, efectuando transacciones no autorizadas o que no sean exclusivamente para el beneficio, entre otros criterios. Art. 3 de la Ley Núm. 76-2020 (8 LPRA sec. 1573). En otras palabras, los referidos criterios demuestran un énfasis en la falta de autorización de una transacción o retiro de dinero. Por otro lado, el *Bank Secrecy Act*—y, específicamente, el *Suspicious Activity Report*—aplica únicamente a actividades sospechosas que violan o pueden violar leyes federales, por lo cual no es pertinente al caso de marras. 12 CFR sec. 21.11.

En el presente caso, el Tribunal de Primera Instancia actuó correctamente al desestimar la demanda de la apelante contra el Banco Popular. El expediente demuestra que las codemandadas pertinentes eran depositantes o cotitulares de las cuentas de depósito del señor Sánchez Salamán, más que los contratos referentes a dichas cuentas disponen la responsabilidad del depositante sobreviviente de notificar al Banco Popular sobre el fallecimiento de uno de los cotitulares. Ante la omisión de esta notificación por las cotitulares demandadas, el Banco

Popular carecía de cualquier obligación de codificar las cuentas y congelar los fondos en controversia. Más bien, el Banco Popular, dentro de las circunstancias, cumplió con sus obligaciones contractuales al permitir a las cotitulares demandas retirar y cerrar las respectivas cuentas de depósito. Por tanto, ante la falta de incumplimiento del apelado, la apelante carece de causa de acción contra el Banco Popular y, en efecto, se debe desestimar su demanda contra este.

Por los fundamentos expresados, confirmamos la *Sentencia Parcial* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones