ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| ALBERTO FIGUEROA BERMÚDEZ<br><br>Parte Apelante<br><br><br>v.<br><br><br><br>Cenlar, Central Loan Administration & Reporting<br><br>Parte Apelada | TA2025AP00400 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.: BY2025CV03448<br><br><br>Sobre: Embargo Ilegal |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 17 de noviembre de 2025

Comparece el señor Alberto Figueroa Bermúdez ("Sr. Figueroa" o "Apelante") y solicita la revisión de la Sentencia emitida el 15 de septiembre de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro de instancia" o "foro apelado"). En esa ocasión, el foro de instancia desestimó la Demanda bajo la Regla 10.2 de Procedimiento Civil.

Por los fundamentos que exponemos a continuación, **confirmamos** la Sentencia apelada.

-I-

A continuación, exponemos los hechos pertinentes a la controversia ante nos.

El 30 de julio de 1998, el señor Laudelino Hernández Hernández ("Sr. Hernández") constituyó una hipoteca a

---

[1] Notificada el 17 de septiembre de 2025.

favor de Levitt Mortgage Corp., o a su orden, por la suma principal de $69,018.00, con un interés anual de 8% y vencimiento el 1ro de agosto de 2028, mediante la Escritura Número 277 ante el Notario Público Rafael A. Lugo Guzmán[2]. Cabe señalar que, actualmente, existe un proceso de ejecución de hipoteca contra la sucesión del Sr. Hernández, bajo el caso BY2025CV01965.

Años después, el 30 de junio de 2025, el Sr. Figueroa presentó una *Demanda*[3] por Embargo Ilegal contra CENLAR, Central Loan Administration & Reporting ("CENLAR" o "Apelado"). Según surge de los autos del caso, el 6 de diciembre de 2013, el Apelante pactó un *Contrato Opción a Compraventa*[4] con el Sr. Hernández. Posteriormente, según alega el Apelante, la propiedad en cuestión fue alquilada al señor Henry Pérez Acosta por la cantidad de $850.00 mensuales. Cabe señalar que, según surge del caso de ejecución de hipoteca, el Sr. Hernández falleció en o alrededor del 24 de febrero de 2021. Ahora bien, CENLAR alega que el deudor incumplió con los pagos hipotecarios, por lo que procedió a ponerle un candado a la propiedad[5]. Entre las alegaciones, el Apelante señala que el ponerle un candado a la propiedad constituye un embargo ilegal, por lo que CENLAR tiene que responder por los daños causados, entre ellos, la mensualidad de $850.00 que ha dejado de recibir por parte de su inquilino.

---

[2] Véase Anejo - Hipoteca en la Entrada #11 del expediente del Tribunal de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Véase Entrada #1 del expediente del Tribunal de Primera Instancia en SUMAC.
[4] Véase Anejo del recurso apelativo.
[5] Véase la oposición al recurso de apelación.

Oportunamente, el 27 de agosto de 2025, CENLAR presentó una *Moción de Desestimación*[6]. Entre sus fundamentos, expresó que la propiedad en controversia está a nombre del Sr. Hernández y que este dejó de hacer los pagos mensuales pactados en la escritura de compraventa, el 1 de agosto de 2023, lo que ha provocado el vencimiento de la deuda. Además, señaló que el Contrato de Opción de Compraventa nunca se formalizó mediante instrumento público, por lo cual no obliga al Apelado. Conforme con lo anterior, CENLAR alega que el Apelante basa su reclamación en la autorización de un contrato de opción de compraventa con el Sr. Hernández. Sin embargo, dicho contrato nunca se formalizó, por lo cual la propiedad en controversia no está a nombre del Apelante, sino del Sr. Hernández. Además, señala que el Apelante no tiene legitimación activa por no ser titular ni heredero del causante y que cualquier traspaso o transferencia de titularidad es contrario a los términos y condiciones pactados en la Escritura de Hipoteca. Sobre el Contrato de Opción de Compraventa, el Apelado arguye que este no lo obliga, sino que prevalecen los términos y condiciones pactados en la Escritura de Hipoteca. A tenor con lo anterior, CENLAR argumentó que el Apelante no tiene una reclamación que justifique la concesión de un remedio.

Así las cosas, el 5 de septiembre de 2025, el Apelante presentó una *Oposición a Moción de Desestimación*[7]. En esa ocasión, el Apelante argumentó que tiene legitimación activa debido a que opcionó la propiedad el 6 de diciembre de 2013, cumplió con el

---

[6] *Íd.*, Entrada #11.
[7] *Íd.*, Entrada #13.

contrato de opción y ha estado en posesión de la propiedad desde la fecha del contrato. Además, alega que no se ha podido llevar a cabo la escritura de compraventa por razones ajenas a él, sin embargo, aduce que la falta de tracto no le quita legitimación. Como parte de sus alegaciones, señaló que sufrió un daño real, inmediato y preciso, por lo que no procede la desestimación de la Demanda.

Luego de evaluar la posición de las partes, el 17 de septiembre de 2025, el foro de instancia emitió una *Sentencia Final*[8]. El foro apelado concluyó que el Contrato de Opción de Compraventa nunca se formalizó, por lo que el Apelante carece de legitimación activa en el presente caso. Además, señaló que el Apelado no fue parte en el contrato, por lo tanto, no queda obligado por lo acuerdos que este contiene. Finalmente, el foro de instancia expresó que el Apelante no presentó evidencia alguna que mostrara que la propiedad en cuestión estaba ocupada y se haya hecho un embargo ilegal, por lo que concluyó que el Apelante no tiene remedio alguno y desestimó la Demanda con perjuicio.

Inconforme con dicha determinación, el Sr. Figueroa acudió ante esta Curia mediante recurso de apelación e hizo el siguiente señalamiento de error:

**ERRÓ EL TPI, AL DESESTIMAR LA CAUSA DE ACCIÓN CON PERJUICIO**

-II-

**A. Moción de Desestimación**

La Regla 10.2 de Procedimiento Civil y su jurisprudencia interpretativa le confieren a la parte demandada la oportunidad de presentar cualquiera de las

---

[8] *Íd.*, Entrada #15.

siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable.[9]

Ante una moción de desestimación "*el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas*".[10] Asimismo, deberá interpretar las alegaciones de forma conjunta, liberal y de la manera más favorable posible en favor del demandante.[11] Es decir, "*[l]a demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar*".[12] Lo anterior aplicará únicamente a los hechos alegados de forma "*clara y concluyente, que de su faz no den margen a dudas*".[13]

## B. Contratos en general

Es norma reiterada que las obligaciones nacen de la ley, los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga culpa o negligencia[14]. A su vez, los contratos se perfeccionan cuando concurren tres elementos, a saber: objeto,

---

[9] 32 LPRA Ap. V, R. 10.2.
[10] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).
[11] *Torres, Torres v. Torre et al.* 179 DPR 481, 502 (2010).
[12] *Aut. Tierras*, supra, a la pág. 429.
[13] *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).
[14] El derecho de Contratos aplicable al caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, debido a que el Contrato de Opción de Compraventa al cual el Apelante hace referencia se efectuó antes de la aprobación del Código Civil vigente. Véase, Artículo 1042 del Código Civil de Puerto Rico de 1930, 31 LPRA § 2992; *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021).

consentimiento y causa[15]. El contrato existe desde que una o varias personas consienten a obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio[16]. En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes[17]. Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "*y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley*"[18]

## C. Contrato de Opción de Compra

El contrato de opción de compraventa se trata de un contrato que ha sido definido por la jurisprudencia como "[…] *un contrato consensual, mediante el cual una parte (promitente) le concede a otra (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente. Esta facultad tendrá que ejercitarse dentro de un periodo de tiempo definido por las partes, y tanto el promitente como el optante se beneficiarán con el negocio*"[19]. Esencialmente, el contrato de opción de compra es un contrato preparatorio dirigido al eventual otorgamiento de un contrato de compra y venta. El mismo se distingue por los siguientes elementos esenciales:

---

[15] Art. 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA § 3391.
[16] Art. 1206 del Código Civil de Puerto Rico de 1930, 31 LPRA § 3371; *Aponte Valentín et al. v. Pfizer Pharm*, 208 DPR 263 (2021).
[17] *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); Burgos López et al. v. Condado Plaza, 193 DPR 1, págs. 7-8 (2015); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994).
[18] Art. 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA § 3375; *Aponte Valentín et al. v. Pfizer Pharm, supra; Burgos López et al. v. Condado Plaza, supra*, pág. 8.
[19] *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 722 (2001).

(1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (de compraventa) sin obligación por parte de este; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante[20].

## D. Legitimación

En nuestro esquema jurídico, los pleitos se deben tramitar por la persona que por ley tenga el derecho que se reclama, es decir, la parte legítima[21]. Es decir, como parte demandante debe figurar aquella a favor de quien el derecho material o sustantivo establezca el derecho objeto de la demanda[22].

Particularmente, la Regla 15.1 de Procedimiento Civil[23] dispone lo siguiente:

> Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquella para cuyo beneficio se hace la reclamación; y cuando por ley así se disponga, podrá presentarse una reclamación a nombre del Estado Libre Asociado de Puerto Rico para beneficio de otra persona. No se desestimará un pleito por razón de no haberse tramitado a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la presentación del pleito, o se una al mismo, o se sustituya en lugar de la parte promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiese incoado por la persona con derecho.

Cabe señalar que la doctrina de legitimación activa o *standing* limita a quienes pueden acudir a los

---

[20] *Íd.*
[21] Hernández Colón, *Derecho Procesal Civil*, 6ta ed., LexisNexis, San Juan, 2017, pág. 118.
[22] *íd.*
[23] Regla 15.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 15.1.

tribunales a vindicar sus derechos. Se trata de una de las vertientes del principio de justiciabilidad mediante la cual se determina quién puede ser parte en una controversia ante nuestros tribunales[24]. Además, dicha doctrina ha sido definida como la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante[25].

Por su parte, el principio de justiciabilidad surge atendiendo consideraciones de índole constitucional y de autolimitación adjudicativa, que exige tener ante sí un caso y controversias reales antes de ejercer el poder judicial[26]. De este modo, nuestro ordenamiento exige que las partes tengan legitimación activa para iniciar un pleito[27]. Una parte cuenta con legitimación activa para instar una acción, cuando concurren los siguientes requisitos: (1) haber sufrido un daño claro y palpable; (2) que el referido daño sea real, inmediato y preciso, y no abstracto o hipotético; (3) una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surja bajo el palio de la Constitución o de une ley[28]. Por lo tanto, no será justiciable aquella controversia en la que, entre otras razones, una de las partes no tenga legitimación activa[29]

---

[24] *Lozada Tirado et al., v. Testigos de Jehová*, 177 DPR 893 (2010); *Hernández Torres v. Gobernador*, 129 DPR 824, 835 (1992).
[25] *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019); *Bathia Gautier v. Gobernador*, 199 DPR 59 (2017).
[26] *Ortíz v. Panel F.E.I.*, 155 DPR 219, 251 (2001); *ELA v. Aguayo*, 80 DPR 552, 559 (1958).
[27] *Ramos, Méndez v. García García, supra.*
[28] *Id.*, págs. 394-395; Asoc. *Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 943 (2011).
[29] *Ramos, Méndez v. García García, supra; Torres Montalvo v. Gobernador ELA*, 194 DPR 760 (2016).

-III-

En el presente caso, el Apelante alega que erró el foro de instancia al desestimar la Demanda con perjuicio. Veamos. Según surge del expediente de epígrafe, el Sr. Figueroa alega tener legitimación activa para presentar el caso ante nos, a raíz del Contrato de Opción de Compra pactado con el Sr. Hernández. Ahora bien, en su moción de desestimación, CENLAR expresó que el Apelante no tiene legitimación activa debido a que dicho contrato no se elevó a instrumento público, por lo tanto, lo acordado entre las partes no tiene efecto alguno contra el Apelado. Además, señaló que el Apelante no es titular ni heredero del Sr. Hernández.

El contrato de opción es un acuerdo en el que el promitente, en este caso el Sr. Hernández, le concedió el derecho exclusivo al Apelante para que decida si compra el inmueble objeto de controversia. Ahora bien, CENLAR no fue parte en dicho acuerdo, por lo que sus cláusulas no lo obligan en manera alguna.

Pasemos a evaluar lo concerniente a la legitimación activa. El Apelante fundamenta su alegada legitimación en el contrato de opción. Sin embargo, dicho contrato no transfiere la titularidad del bien, sino que le da la opción de adquirirlo mediante compra, lo que no ha ocurrido en este caso. Por el contrario, según surge de la Certificación Registral presentada por CENLAR, el inmueble en controversia continúa a nombre del señor Laudelino Hernández Hernández. Es decir, el Apelante intenta reclamar un derecho sobre una propiedad que no le pertenece, pues no es titular ni heredero del causante.

Por lo tanto, concluimos que el Apelante no tiene una reclamación contra CENLAR que justifique la concesión de un remedio. Siendo así, procede confirmar el dictamen emitido por el foro de instancia en el que desestimó la Demanda con perjuicio.

-IV-

Por los fundamentos que anteceden, ***confirmamos*** la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones